# EXHIBITS

## Table of Contents

29. Motion to Stay Sentence of Probation and Fine

30. United States Undated Blotter Report

31. Day 1 and Day 2 reflecting Staff Judge Advocates as Government Prosecutors

Kaytrena J. Francis
501 Chinquapin Dr
Eglin AFB Fl. 32542
Appellant, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTIRCT OF FLORIDA
## PENSACOLA DIVISION

```
Kaytrena J. Francis           |        No. 3:05cr27/RV
      Appellant, pro se,      |        No. 3:05mj80/MD
                              |        Judge Roger Vinson
      v.                      |
                              |
United States of America      |
      Appellee                |
```

## APPELLANT'S MOTION TO STAY SENTENCE OF PROBATION AND FINE PENDING APPEAL

In accordance with FRCP 38(d) and FRAP Rule 8(C), Kaytrena J. Francis, Appellant stay motion addresses (1) the likelihood that Appellant will prevail on the merits, (2) the prospect of irreparable injury to Appellant absent a stay, (3) the possibility of harm to other parties if a stay is granted, and (4) the public interest in granting a stay.

## BACKGROUND

On December 10, 2004 Appellant was rudely interrupted by Captain Donna E Young, 96 MDG/SGOS who wanted Appellant to stop in the middle of doing crunches just so that she could work out. Although Appellant explained to Young that she would be done in a minute, Young stood beside Appellant in a confrontational manner starring Appellant down. Appellant however, ignored Young and continued to keep track of the number of crunches that Appellant was doing. Young left the room and went looking for someone in the gym in an effort to demonstrate to Appellant that she had the power to get Appellant in trouble.

Young found First Lieutenant Kee-Sha D. Ekridge whom Young had outranked and alleged that Appellant was not being fair with gym equipment. Eskridge confronted Appellant concerning Young's allegation. When Appellant informed Eskridge that she was only doing a superset and was in the middle her workout when Young approached her, Eskridge refuse to listen to what Appellant had to say. Eskridge insisted on taking sides with Captain Young whom had outranked Eskridge. In an effort to resolve the matter, Appellant asked Eskridge for the name of the 96 Services Commander. Eskridge

refused to give Appellant the name of the services commander and stated that she (Eskridge) was the head of Operations and any complaints that needed to made needed to come to her because the gym was her gym. Eskridge further attempted to escalate an incident by telling Appellant that she was going to throw her out of the gym because she did not like Appellant addressing her as Lieutenant.

Appellant then asked that the Security Forces be called in order to resolve the matter.

Eskridge retaliated against Appellant for asking for the name of the Services commander. Eskridge telephoned the Security Force Squadron and falsely claimed that she had a belligerent customer that was refusing to leave the gym when she knew that Appellant had not been belligerent and did not do anything wrong but was waiting to speak with the Security Forces. Lt Eskridge further prevented Appellant from resolving the matter with the Security Forces by interfering with Appellant attempt to speak with Security Force enlisted service members Technical Sergeant (TSgt) Chad Dillon and Airman First Class (A1C) Jason Archilla. Master Sergeant (MSgt) Shepherd, who worked with Eskridge interfered with Appellant attempt to resolve the matter and instigated an arrest by stating that Appellant probably did not belong on the base.

TSgt Dillon asked Appellant if she belonged on the base. Appellant gave TSgt Dillon her name and her on base residence address and informed Dillon that she had forgotten her purse at home. Appellant further asked Dillon if he could call her active duty military spouse who was at work on Eglin Air Force Base to verify who she was.

MSgt Shepherd suggested that TSgt Dillon arrest Appellant since she did not have her ID. Since no one was interested in resolving the matter, Appellant asked that the Security Force Flight Chief be called in order to resolve the matter. TSgt Dillon told Appellant that she was not going to speak with anyone and that she was under arrest for failure to produce her ID.

TSgt Dillon allowed Lt Eskridge and MSgt Shepherd who outranked him to control and influence his actions. TSgt Dillon and A1C Archilla used excessive force against Appellant. TSgt Dillon grabbed Appellant by her breast in a bear hug manner while A1C Archilla grabbed Appellant between her legs. Appellant was picked up, slammed down, handcuffed, and sat on for ten minutes while Lt. Eskridge and MSgt Shepherd watched with approval.

When the Flight Chief, MSgt Henderson arrived, he found Dillon sitting on Appellant while she was in handcuffs. The Flight Chief immediately instructed TSgt Dillon to get off the Appellant and asked Appellant what happened. Appellant attempt to speak with MSgt Henderson was met with negative results because Lt. Eskridge and MSgt Shepherd interfered by ganging up on Appellant in a mob like fashion and alleging that Appellant was not being fair with the gym equipment. Appellant was transported to Eglin AFB Security Force station.

While at the Security Force station Appellant informed Security personnel that she was injured and requested to be taken to the hospital for her injuries. Security personnel refused to take Appellant to hospital for her injuries. Appellant requested to file a complaint against TSgt Dillon and A1C Archilla for using excessive force against her and Appellant request was denied. Frustrated, Appellant stated that she was registered voter, she did not have any traffic citations; she follow the law and was going to notify her congressman for having her constitutional rights violated and requested to make a statement. While Appellant was writing her statement, TSgt Dillon retaliated against Appellant for stating that she would notify her congressman by giving Appellant two citations (1) FSS 843.01, resisting arrest with violence and (2) FSS 873.03, disorderly conduct (Exhibit 1).

### ARGUMENT

Appellant's stay motion will demonstrate on appeal that: (1) pre-trial proceedings, trial, conviction, judgment and sentence were infected by a multitude of prejudicial errors that render the conviction, judgment entered, and sentence unconstitutional (2) Appellant has been deprived of her constitutional rights guaranteed by the 1st. 4th, 8th, 5th, 6th and 14th amendments.

### STATEMENT OF FACTS

## I. THERE IS A SUBSTANTIAL LIKELIHOOD THAT APPELLANT WILL PREVAIL ON THE MERITS.

### 1. APPELLANT WAS PREJUDICE AND HARMED BY THE MAGISTRATE COURT WHEN IT SUMMONS APPELLANT TO APPEAR FOR STATE OFFENSE WHICH WERE NOT WITHIN ITS JURISDICTION.

On or about March 7 2005, I received a summons (Exhibit 2) to appear in the magistrate court on March 16, 2005 for violation notices received December 10 2004, citing: FSS 843.01, Resisting arrest with violence and FSS 873.03 Disorderly conduct.

According to 18 USC § 3231, Federal district courts have jurisdiction over offenses committed against the laws of the United States and "nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof. ". Both violation notices cited Florida state laws (1) FSS 843.01, Resisting arrest with violence (2) FSS 877.03, Disorderly Conduct; therefore, the district court lacked jurisdiction.

Since FSS 843.01, *Resisting Arrest with Violence* is felony offense; it would have gone before a county Judicial Circuit court. Upon investigation, a Florida State Attorney would have found the following undisputed facts

3

1 .Forgetting one's purse at home is not probable cause for an arrest under Florida State Law.

2. Dental x-rays irrefutably prove that I can't bite.

3. I am a citizen of the United States. I am a civilian.

4. Congress does not grant Air Force enlisted service members the power to *apprehend* or arrest civilians (title 10).

5. Enlisted service members can only apprehend person(s) subject to the UCMJ

6. Title 10 US Code Section 802 Art 2 describes person(s) subject to UCMJ.

7. I am not [a]ny person described within Title 10 US Code Section 802 Art 2.

8. I am **not** subject to the UCMJ

Having found the above undisputed facts, a State Attorney would have dismissed the charges. Therefore, the magistrate court committed a reversible error when it summons me to appear for a charge which could have been dismissed. Moreover, I suffered irreparable harm because I was deprived of Florida State constitutional rights guaranteed under ARTICLE I Sections (2, 9, 12, 16, and 17).

## 2 APPELLANT WAS PREJUDICE AND SUFFERED IRREPARABLE HARMED WHEN PROSECUTORS CHANGED THE CHARGES FROM STATE OFFENSE TO FEDERAL OFFENSES AND FILED AN INFORMATION IN THE MAGISTRATE COURT UNDER CASE NO. 3:05mj80

FSS 843.01, Resisting Arrest with Violence was changed to

*Count One: That on or about December 10, 2004, in the Northern District of Florida, and within the special maritime and territorial jurisdiction of the United States, to wit: Eglin Air Force Base, Florida, the defendant Kaytrena J. Francis, did forcibly assault, resist, oppose, impeded, intimidate, and interfere with technical Sergeant Chad T. Dillon and Airman First Class Jason Archilla, United states Air Forces Security Forces Officers, while they were engaged in their official duties, in violation of Title 18, United States Code, Section 111 (Exhibit 3).*

FSS 877.03, *Disorder Conduct* was changed to:

*Count Two: That on or about December 10, 2004, in the Northern District of Florida, and within the special maritime and territorial jurisdiction of the United States, to wit: Eglin Air Force Base, Florida, the defendant Kaytrena J. Francis, did engage in conduct as to constitute a breach of the peace or disorderly conduct, in violation of Florida Statue 877.03 and Title 18, United States Code, Sections 7 and 13 (Exhibit 3).*

> "The government may proceed with a case based on a violation notice if the case involves only a petty offense. Congress determined that accusations of any offenses greater than petty offenses need the heightened accountability afforded by the procedures used to obtain an indictment, information, or complaint."
> BOYD v USA 99-10384 (2000)

4

Moreover, "A defendant is entitled to a preliminary examination, unless waived, when charged with any offense, other than a petty offense, which is to be tried by a judge of the district court." FRCP 5(c)

Under the United States Sentencing Commission guideline manual (November 2004), a violation of 18 USC § 111 is a felony; thus, the government could not proceed based on a violation notice.

Appellant was denied due process because a grand jury was required to investigation this charge to determine probable cause for going to trial.

### 3. APPELLANT WAS PREJUDICE AND SUFFERED IRREPARBLE HARMED BY THE MAGISTRATE COURT WHEN IT ABUSE ITS DISCRETION IN ASKING APPELLANT TO ENTER A PLEA AND SCHEDULING A TRIAL BEFORE THE MAGISTRATE COURT.

On March 16, 2005 I appeared without counsel for my initial appearance.

When my name was called, magistrate judge Honorable Miles Davis asked Captain Michael Yoder (Government prosecutor) what the charge is. Captain Yoder, read the charges from the information filed on March 11, 2005, under a under case no. 3:05mj80.

When Honorable Miles Davis asked Yoder what was the offense, Yoder made a false statement that the offense was a Class A misdemeanor which carried a maximum sentence of one year in jail and a maximum fine of $100.000, In addition Yoder stated he checked NCIC, NLETS, but not wants.

Honorable Miles Davis asked how do you plea? Appellant responded: Not Guilty.

According to the local Rule 73.1 (B) (a) of the United States district court for the northern district of Florida, when a complaint charges a misdemeanor that is not a petty offense the magistrate judge is to proceed according to instructions provided in Fed. R. Crim. P. 5(c) and 5.1.

Pursuant to 18 USC §19 "petty offense" means a Class B misdemeanor, a Class C misdemeanor". Since Captain Michael Yoder stated that the offense was a Class A misdemeanor, the magistrate judge lacked jurisdiction to ask Appellant to plea.

I was prejudiced and suffered irreparable harm because I was asked to plea before a finding of probable cause. Moreover, the United States Sentencing Commission 2004 sentencing guideline notes that a conviction of 18 USC § 111 is a felony not a Class A misdemeanor; therefore, the complaint required an investigation of a grand jury. A grand jury investigate would have revealed that the violation notices did not cite Appellant for 18 USC § 111 but for two state offenses; therefore, the district court lacked jurisdiction over the matter.

Even if the violation notices had cited Appellant for 18 USC § 111 the grand jury could not have returned an indictment because:

*1. Prosecutors did not offer anything that remotely suggested that appellant was ever engaged in any criminal activity or was wanted for any crime when an arrest without warrant was made (Exhibit 4).*

*2. Pursuant to Title 9 criminal resource manual 18 U.S.C. § 111 does not fall under crimes committed within the Special Maritime Jurisdiction of the United States.*

*3. "The Assimilative Crimes Act, 18 U.S.C. § 13, makes state law applicable to conduct occurring on lands reserved or acquired by the Federal government as provided in 18 U.S.C. § 7(3), when the act or omission is not made punishable by an enactment of Congress."*

*4. Eglin Air Force Base qualifies as land that is reserve or acquired by the Federal government and 18 USC §111 constitute an enactment of Congress.*

"Federal agency regulations, violations of which are made criminal by statute, have been held to preclude assimilation of state law. *See United States v. Adams*, 502 F. Supp. 21 (S.D.Fla. 1980)(carrying concealed weapon in federal courthouse); *United States v. Woods*, 450 F. Supp. 1335 (D.Md. 1978)(drunken driving on parkway). In *Adams*, 502 F. Supp. 21, the defendant was charged with carrying a concealed weapon in a United States Courthouse in violation of 18 U.S.C. § 13 and the pertinent Florida felony firearms statute. In dismissing the indictment, the Adams court concluded that a General Services Administration (GSA) petty offense weapons regulation (41 C.F.R. § 101-20.313), explicitly provided for by statute, 40 U.S.C. § 318a, amounted to an enactment of Congress within the meaning of 18 U.S.C. § 13 and, therefore, the defendant could not be prosecuted by the assimilation of state law which prohibited the same precise act."

http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/crm00667.htm

## 4. APPELLANT WAS PREJUDICE AND SUFFERED IRREPARBLE HARMED WHEN MAGISTRATE COURT ERRED IN ASKING AN INEFFECTIVE COUNSEL TO ASSIST APPELLANT AT HER INTIAL APPEARANCE

After Hon Miles Davis asked Appellant to plea, Hon Miles Davis informed Appellant that she could have the trial before a magistrate judge or a district judge. Hon Miles Davis asked Appellant who she wanted to hear her case. Appellant who never been convicted of misdemeanor or a felony in her life, did not know how to answer this question. Hon Miles Davis asked a Public Defender who was working to step outside with Appellant and assist Appellant with her decision. The Public Defender was ineffective when he informed Appellant that a district Judge would not normally hear this type case and suggested that Appellant have Honorable Miles Davis hear the case.

6

Appellant hesitated and stated that she wanted Honorable Miles Davis to hear her case. Honorable told Appellant that when she found an attorney, Appellant's attorney could still change where he wanted the trial heard. Honorable Miles Davis schedule a trial date for May 2, 2005 before him in the Magistrate court and advised Appellant that she needed to inform the court no later than March 28, 2005, when she found an Attorney. A reminder letter was sent from the magistrate clerk office with Other Pre-Trial Orders to give to an attorney when Appellant found an attorney (Exhibit 5).

Appellant was prejudiced and harmed because Honorable Miles Davis would not have scheduled a trial before him in the magistrate court; a grand jury would have investigated to determine if there was cause for going to trial. Appellant would have been vindicated because a grand jury would not have found probable cause for going to trial.

## 5. APPELLANT WAS PREJUDICE AND SUFFERED IRREPARBLE HARMED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE FROM HER FIRST COUNSEL SELLERS

On March 23, 2005 Appellant met with Mr. Stevenson. Mr. Stevenson informed Appellant that citations that Appellant was issued were State offenses and a violation of FSS 877.03, resisting arrest with violence was a felony and required a grand jury investigation to establish probable cause before Appellant could go to trial.

On March 24, 2005 Mr. Stevenson filed a request for a jury trial before a district judge (Exhibit 6) on behalf of David Sellers who was away in Italy until April 5, 2005. The request was made with the understanding that a grand jury would have to investigate the government's case.

On April 27, 2005, Appellant received a phone message from her firsts Attorney, David Lee Sellers office requesting that Appellant come in and signed a waiver of Speedy trial right. After researching a waiver of Speedy trial right on the Internet Appellant phoned Sellers office and objected to signing a waiver because she had not been indicted by a grand jury and wanted a grand jury to investigate the matter and establish probable cause that an offense had been committed. Appellant has never waived her right to a preliminary examination.

Sellers was ineffective; he failed to disclose his knowledge that the court lacked jurisdiction to try Appellant for the state offenses; violation notices did not cite Appellant for 18 USC § 111; Appellant had never had a preliminary examination; and Appellant wanted a grand jury investigation to establish probable cause that a crime had been committed. In addition Sellers was aware that Appellant had been unlawfully arrested on December 10, 2004 and that the arrest was made without a warrant because he had a copy of an unsigned statement of probable cause; yet he did nothing to assist Appellant.

Appellant was prejudice and harmed because first counsel took advantage of the fact that Appellant had never been convicted of a misdemeanor or a felony in her life. Sellers informed Appellant that a grand jury would not hear her case and tried to convince

7

Appellant to have the trial heard before magistrate judge, Honorable Miles Davis. First counsel was ineffective because he was more interested in what Captain Michael Yoder (government prosecutor) wanted to do rather than defending Appellant. Sellers was aware that Appellant had repeatedly asked for an investigation, yet he ignored Appellant's request. Appellant was prejudiced and harmed because Sellers did not take any ethical legal measures to vindicate Appellant.

### 6. APPELLANT WAS PREJUDICE AND HARMED WHEN PROSECUTOR MISUSED A LEGAL PROCESS TO FORCE APPELLANT TO TRIAL

On April 28, 2005, the government was granted a continuance and the case number was immediately changed from 3:05mj/80 to 3:05cr-0027/RV without a grand jury investigation.

Since I was waiting for a grand jury to investigate to determine if their was probable cause for going to trial, a continuance could not have been filed because probable cause had not yet been established. Captain Michael Yoder (government prosecutor) knew that the Speedy trial clock was ticking but most importantly he knew that a grand jury would not indict without probable cause that a crime had been committed. Yoder tried to get Sellers to convince Appellant to allow Honorable Miles Davis try the case without a preliminary examination and Appellant objected because she wanted a grand jury investigation.

Appellant was prejudice and harm because the continuance was filed with an ulterior motive to block a grand jury investigation and to force Appellant to trial.

### 7. APPELLANT WAS PREJUDICE AND HARMED WHEN DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING A CONTINUANCE.

On April 28, 2005 a continuance was granted to the government (United States Air Force) and the case number was immediately changed from 3:05mj80 to 3:05-cr-27-001 without a preliminary examination. When I asked Sellers how the government got a case number without a grand jury investigation, he replied that they got a judge to hear the case.

According to the United States District court for the Northern District of Florida web site, cases among the judges of the district are given to them by the clerk on a random basis. Appellant was prejudice and suffered irreparable harm because the court bound Appellant for trial without a probable cause ever being established that a crime had been committed.

### 8. APPELLANT WAS PREJUDICE AND HARMED BY INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO move to dismiss WHEN THE CONTINUANCE WAS GRANTED.

When the continuance was granted Sellers was deficient for failing to move to dismiss because Appellant had not been indicted by a grand jury and had never had a preliminary examination.

Disappointed, Appellant searched for another attorney to replaces Sellers.

**9. APPELLANT WAS PREJUDICE AND SUFFERED IRREPARBLE HARM BY HER TRIAL COUNSEL WHO FALSIFIED A MOTION TO DISMISS WITH PREJUDICE DUE TO VIOALTON OF THE SPEEDY TRIAL ACT DOCUMENT**

On May 5, 2005 Appellant retained Robert Augusta Harper to replace existing attorney Sellers.

Harper proved to be worst than ineffective he abandoned his profession (see *Motion to Dismiss Counsel for Professional Misconduct*)

Harper knowingly submitted a false document (motion to dismiss with prejudice due to violation of the speedy trial act). Harper wrote "The defendant was issued a summons on 10 December 2004 for an event that allegedly took place on the same date. It was not until 11 March 2005 that the Government filed an indictment based on the summons alleging that Defendant resisted officers engaged in their official duties and committed the offense of disorderly conduct The indictment was filed approximately ninety-one (91) days after issuance of the initial summons." when Harper knew that:

1. Appellant had been unlawfully arrested an issued violation notices citing FSS.843.01 and FSS 877.03 which was out of the district court jurisdiction (Exhibit 1).
2. the arrest was warrantless because in his possession was a copy of an unsigned *statement of probable cause* which was furnished with the discovery (Exhibit 4).
3. he had in his possession a physical copy of the information filed on March 11, 2005 (Exhibit 3).
4. An indictment is filed after a grand jury investigates a case and establishes probable cause for going to trial. In the case of the Appellant, she was waiting for a grand jury investigation which was blocked by the government when the government filed a continuance.

Appellant suffered irreparable harm because the document was submitted with malice. Harper succeeded in deceiving the court that Appellant had been indicted by a grand jury when a grand jury had never investigated the matter. Appellant was harmed because she was forced to go to trial without a finding of probable cause to go to trial and she was forced to go to trial for an offense she was not cited.

**10. APPELLANT WAS PREJUDICE AND HARMED BY THE DISTRICT COURT WHEN IT ERRED IN DENYING APPELLANT MOTION TO DISMISS**

9

Honorable Roger Vinson denied Appellant motion to dismiss on an erroneous legal premise. Honorable Roger Vinson asserted "The defendant was not taken into custody, but instead was released after military police issued her two violation notices. The violation notice cites defendant with resisting arrest without violence, in violation of Title 18, United States Code, Section 111, which is a Class A Misdemeanor. The Second violation notice cites defendant with Disorderly Conduct in violation of Section 877.03, Florida Statues, a Class B Misdemeanor."

Appellant was not cited for in violation of Title 18, United States Code, Section 111. Appellant was cited for FSS 843.01, resisting arrest with violence and FSS 873.03, disorderly conduct (Exhibit 1).

The Speedy Trial Act requires that a federal indictment be filed within 30 days after arrest or summons, or else the charge must be dismissed. 18 U.S.C. §§ 3161(b), 3162(a)(1). summons. In the case of the Appellant she was arrested and so confirmed by the violation notices (Exhibit 1) and a *Statement of Probable Cause* was never filed (Exhibit 4).

Even if the violation notices had cited Appellant for 18 USC § 111, the clock would have been triggered the date (March 16, 2005) Appellant was summons to appear. Since 18 USC § 111 is not a petty offense the information filed before Appellant initial appearance was invalid because the government could not proceed on a violation notice. Moreover, a since violation of 18 USC § 111 is a felony which required a grand jury to investigate, and establish probable cause before formally charging Appellant. Appellant did not waive a preliminary examination or a grand jury investigation. When the continuance was filed by the government to block the grand jury investigation the speedy trial clock did not officially stop; therefore, Appellant speedy trial rights guaranteed by the sixth amendment were violated. In addition, Appellant suffered irreparable harm because Honorable Roger Vinson bound Appellant for trial for a violation, 18 USC § 111 which Appellant had not been cited.

## 11. APPELLANT TRIAL COUNSEL WAS INEFFECTIVE IN ALLOWING APPELLANT TO BE TRIED FOR AN OFFENSE THAT APPELLANT HAD NOT BEEN CITED

On June 6, 2005, Trial counsel was ineffective for allowing Appellant to be tried for an offense that Appellant had not been cited. Trial counsel was aware that the violation notice did not Appellant for 18 USC § 111. Trial counsel was a ware that the violation notices cited appellant for state offenses which were not within the District court jurisdiction.

Pursuant to Federal Rules of Criminal Procedure 7(a) (1) (B) an indictment must be obtained if the offense charge is a felony. According to the sentencing guidelines a violation of 18 USC §111 is a felony. Trial counsel was aware that Appellant did not waive her right to a preliminary examination or a grand jury investigation. Trial counsel

was aware that Appellant repeatedly requested that probable cause be established before being forced to go to trial and he ignored Appellant's request.

Trial Counsel was ineffective when he knowingly and maliciously withheld his knowledge from both Appellant and the court that Prosecutors was charging Appellant with a felony. Trial counsel allowed Appellant to be tried before a misdemeanor jury without probable cause ever being established for going to trial.

Appellant was prejudiced and harmed because she was denied due process. The court lacked jurisdiction to try Appellant since she had not been bounded for trial. Appellant suffered irreparable harm because she was deprived of her constitutional rights guaranteed by fourth, fifth, and sixth amendments.

In addition, Appellant suffered irreparable harm because trial counsel took advantage of the fact that Appellant had never been convicted of a misdemeanor or felony in her life. Trial counsel knew that at the time of Appellant trial Appellant did not know anything about the court system and took advantage of her lack of knowledge. Appellant was harmed because she was denied due process and equal protection under the law and suffered irreparable harm when she was deprived of her constitutional rights guaranteed by the 4th, 5th, 6th, and 14th, amendments.

## 12. APPELLAN TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO PROSECUTOR USE OF A PEREMPTORY TRIKE TO REMOVE A JUROR OF APPELLANT RACE.

On June 6, 2005, Trial counsel was ineffective when he failed to object when Captain Michael Yoder (government prosecutor) exercised a peremptory strike o to remove a juror of Appellant's race. Afterwards Appellant suffered unfair prejudice when counsel was ineffective when he willfully refused to object to abusive language such as *"nigger"*, *"that African American"*, and *"they are not important"*. Appellant was prejudiced and suffered irreparable harm because she was denied her right to equal protection under the law guaranteed by the 14th amendment.

## 13. APPELLANT WAS PREJUDICED AND HARM BY PROSECUTION MISCONDUCT.

On June 6, 2005, Captain Michael Yoder (prosecutor) knowingly and willfully intended to deceive both the court and Appellant when he made a false statement that 18 USC § 111 offense level was a Class A misdemeanor. Captain Yoder had previously tried to get David Sellers (Appellant previous attorney) to convince Appellant to allow magistrate judge Honorable Miles Davis to hear the case without a preliminary examination. Yoder was aware that Appellant had repeatedly requested that a grand jury investigate the matter to determine probable cause because she had been unlawfully arrested by enlisted service members TSgt Chad Dillon and A1C Jason Archilla. Yoder withheld his knowledge that the violation notices did not cite Appellant for 18 USC § 111. Yoder knew that the district court lacked jurisdiction to try state offenses and changed the

charge to a federal offense to gain an advantage. Yoder also withheld his knowledge that enlisted service members had made a warrantless arrest and the "Statement of Probable Cause" was never submitted to a magistrate judge for review.

Appellant was prejudice and harmed because Captain Michael Yoder of Eglin Air Force base used the power of the government to force Appellant to trial. Yoder was granted a continuance when Appellant had not been not been indicted by a grand jury. Yoder was successfully in getting Appellant attorney to turn second prosecutor in her case. Captain Yoder was successfully in getting the district court to believe that Appellant fell under Eglin Air Force jurisdiction. Appellant suffered irreparable harm because she was deprived of her constitutional rights guaranteed by the 4th, 5th, 6th, 8th and 14th amendments.

## 14. APPELLANT WAS PREJUDICED AN HARMED WHEN THE DISTRICT COURT ERRED IN USING ERRONEOUS PATTERN JURY INSTRUCTIONS.

On June 7, 2005, when Honorable Roger Vinson stated that they (enlisted service members Technical Sergeant (TSgt) Chad Dillon and Airman First Class Archilla (A1C) were Federal Law Enforcement Officers both Appellant trial counsel, Robert Augustus Harper and prosecutor, Captain Michael Yoder stated agreed that enlisted service members were Federal Law enforcement officers.

**Pursuant to Florida Statue 901.1505** "federal law enforcement officer" means a person who is employed by the Federal Government as a full-time law enforcement officer as defined by the applicable provisions of the United States Code, who is empowered to effect an arrest for violations of the United States Code, who is authorized to carry firearms in the performance of her or his duties, and who has received law enforcement training equivalent to that prescribed in s. 943.13.

Active duty enlisted service members: TSgt Chad Dillon and A1C Archilla are not federal law enforcement officers. Pursuant to Air Force Instruction (AFI) 31-201 Section 7.1 a security police "may apprehend any person subject to the UCMJ if you have a reasonable belief the person being apprehended has engaged or is engaging in criminal activity." Title 10 Title 10 US Code Section 802 Art 2 describes person(s) that are subjected to UCMJ. In the case of the Appellant, Appellant is not subjected to the UCMJ. TSgt Dillon and A1C Archilla could not arrest or apprehend Appellant for forgetting her purse at home.

Trial counsel was ineffective for failing to object to erroneous jury instructions that enlisted service members TSgt Chad Dillon and A1C Archilla were federal law enforcement officers. Counsel was also ineffective for failing to object when Honorable Roger Vinson allowed Captain Michael Yoder (prosecutor) to modify the erroneous jury instructions to add offenses of resisting, opposing, and interfering, and obstructing to the erroneous jury instructions. The additional charges were erroneous also because they applied to federal law enforcement officers and TSgt Dillon and A1C Archilla are not federal law enforcement officers.

Appellant was prejudiced and suffered irreparable harm; Appellant was denied due process because enlisted service members were misrepresented as federal law enforcement officers for the purpose of rendering a verdict.

## 15. APPELLANT TRIAL COUNSE WAS INEFFECTIVE WHEN HE FAILED TO REQUEST THAT JURY BE INSTRUCTED ON THAT THE ARREST WAS UNLAWFUL ARREST

Trial Counsel was ineffective when he failed to ask for jury instructions regarding an unlawful arrest since enlisted service members TSgt Chad Dillon and A1C Archilla made an unlawful arrest or apprehension.

Appellant was prejudiced because the jury was allowed to believe that Congress grants enlisted service members the power to make unlawful arrest on civilians. Appellant was harmed because the jury verdict was based on an assumption that enlisted service members could make a warrantless arrest because Appellant forgot her purse at home.

## 16.    APPELLANT TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED FILE A MOTION FOR JUDGMENT OF ACQUITTAL FOR COUNT ONE AND COUNT TWO.

Trial counsel was ineffective when he did not file a *Motion for Judgment of Acquittal* on counts one; Trial counsel knew that probable cause had not been established that a crime had been committed during trial. Captain Michael Yoder (Eglin prosecutor) did not argue that Appellant broke a federal law or a state law. Yoder argued that Appellant did not share gym equipment, obey gym rules, or gym polices and was trying to get Eglin Air Force active duty members in trouble by filing a congressional complaint. Yoder convinced the jury that Appellant was not important because of her race and her husband's rank. Trial counsel was ineffective for objecting to abusive use of "they are not important" Appellant spouse was not on trial he was there to support Appellant. Therefore, the use of "they" was highly inappropriate and warranted that trial counsel make an objections.

Trial counsel was ineffective for willfully and wantonly attempting to destroy Appellant's appeal ability when he refused to file a motion for judgment of acquittal on both counts. Counsel intended to deceive the Appellate court that Appellant fell under military jurisdiction. Appellant is a civilian and do not fall under the Uniform of Military Justice. Appellant spouse was not on trial; Appellant spouse was only there the support Appellant.

Appellant was prejudiced and suffered irreparable harm; Appellant was deprived of her substantial due process rights guaranteed by the fourth amendment to be free from criminal prosecution accept upon probable cause

**17.   APPELLANT WAS PREJUDCIED HARMED WHEN PROBATION OFFICER SUBMITTED AN ERRONEOUS PRESETENCIING REPORT**

A Presentencing Investigation Report was written with many prejudicial errors; both offense and charge were grossly altered, enlisted service members were misrepresented as officers, offense conduct was falsified, the report erroneously stated that Appellant had been cited for Title 18 § 111 in the violation notices, it concealed the fact that on March 16, 2005 Appellant had appeared without counsel at her initial appearance, it concealed the fact that magistrate judge Honorable Miles Davis had scheduled the trial before him in the magistrate court, it knowingly falsified that Appellant filed a motion of continuance when Appellant had never filed such a motion; and it fabricated an arrest history . The report was written with an ulterior motive to false imprison Appellant. It alleged that Appellant knew that she was being tried for a felony; fabricated arrest history with a case number that gave an appearance that Appellant had been on probation for twelve years; and was written so that the "Class A misdemeanor" and the criminal history value of "none" would appear as clerical errors within the report.

Appellant was prejudice and suffered harm because the presentencing report was also discriminatory and written to make Appellant look like a criminal. If the purpose of the report is to aid judges in determining an appropriate sentence; then it is imperative that honest factual information be provided. Anything that is prejudice within the report is prejudice to Appellant since the judge could rely on its information in applying a sentence. Appellant has never been convicted of a misdemeanor or a felony in her life. Appellant is a registered voter and an outstanding citizen and anything less than the truth was prejudicial and harmful to the Appellant.

**18.   APPELLANT TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FALSIFIED A PRESENTING OBJECTION DOCUMENT AND SUBMITTED IT TO THE COURT**

On July 27, 2005 counsel was ineffective when he told Appellant that he had just learned that a misdemeanor jury had convicted her of a felony and someone did not know what they were doing (*Motion to Withdraw Counsel for Professional Misconduct*)

Trial counsel was ineffective when he showed contempt and acted like a second prosecutor when he attempted have Appellant false imprison for charges that she had not been tried. Counsel wantonly withheld his knowledge that Appellant had been deprived of her right to be free from seizure on December 10, 2004 on Eglin AFB by enlisted service members TSgt Chad Dillon and A1C Archilla who did not have the power to arrest or apprehend Appellant.

Counsel was ineffective when he knowingly falsify a document with the intent to deceive the Appellate court that somewhere off base a crime had been committed against a federal law enforcement officer or a select official. Counsel deliberately modified the language to injure Appellant. Counsel was ineffective when he showed contempt for Appellant and tried help the prosecution case.

14

The language excluded from the information that was filed March 11, 2005 prior to
Appellant initial appearance was:

- *"That on or about December 10, 2004, in the Northern District of Florida, and
  within the **special maritime and territorial jurisdiction of the United States**, to
  wit: Eglin Air Force Base, "*

- *"Technical Sergeant Chad T. Dillon and Airman First Class Jason Archilla,
  United states Air Forces Security Forces Officers,*

- *"while they were engaged in their official duties, **in violation of Title 18, United
  States Code, Section 111"***

The language was modified to read "Resisting and "Impeding Certain Officers" "

Trial counsel was ineffective when he refused to correct the prejudicial errors within the
report. Trial counsel also refused to address the legal matters of the report. Counsel
knowingly submitted a falsified document to the court with the intent to deceive the court
regardless of how harmful the information was to Appellant.

Appellant was prejudiced and suffered irreparable harm because she was deprived of her
constitutional rights guaranteed by 4th, 5th 6th, and 8th, Amendments. Trial Counsel had a
duty of diligence to protect Appellant constitutional rights; trial counsel knowingly and
willing violated his duty of diligence owed to Appellant and his duty owed to the legal
system.

## 19. APPELLANT WAS PREJUDICE AND HARMED WHEN THE DISTRICT
## COURT WHEN ERRED IN SENTENCING APPELLANT

On July 27, 2005, Appellant learned from Trial counsel that a misdemeanor jury had
convicted Appellant of a felony.

On Aug 17, 2005, Appellant sent Honorable Roger Vinson a letter to inform him that the
violation notices cited Appellant for state offenses which was not within the district court
jurisdiction. (Exhibit 7)

On August 23, 2005, at the sentencing hearing trial counsel, probation officer and
prosecutor denied that they were trying to put a felony on Appellant's record. Trial
Counsel claimed that he had just found out that a misdemeanor jury had convicted
Appellant of a felony. Captain Astel stated that she had a right to change the charge and
the charge was one she could have it to. Astel denied that she was trying to put a felony
on Appellant record; claiming that the case was a simple assault case which was a class a
misdemeanor and acknowledge that Appellant was acquitted of assault. The probation
officer stated that that he was following the sentencing guidelines.

15

Any sentencing impose should be determine only after probable cause for going to trial has been established by a preliminary examination or a grand jury; and an accused is bounded over for trial via a reading of their rights with clearly defined charges against him or her. Appellant did not waive a preliminary examination or a grand jury indictment. Appellant was tried without even having her rights read for a violation that she had not been cited.

The Fifth Amendment provides that "*No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty, or property, without due process of law . . . . "*

Appellant was prejudiced and harmed when the court rendered its final judgment of resisting, Opposing and Impeding Certain Officers in violation of 18 USC § 111 and 18 USC §§ 7 & 13.

According to the United States Sentencing Commission an Officer is defined as a government officer performing his official duties.

> **§2A2.4. Obstructing or Impeding Officers** *Application of Certain Chapter Three Adjustments.—*
> *The base offense level incorporates the fact that the victim was a governmental officer performing official duties. Therefore, do not apply §3A1.2 (Official Victim) unless, pursuant to subsection (c), the offense level is determined under §2A2.2 (Aggravated Assault). Conversely, the base offense level does not incorporate the possibility that the defendant may create a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement official (although an offense under 18 U.S.C. § 758 for fleeing or evading a law enforcement checkpoint at high speed will often, but not always, involve the creation of that risk). If the defendant creates that risk and no higher guideline adjustment is applicable for the conduct creating the risk, apply §3C1.2 (Reckless Endangerment During Flight).*

Eglin Air Force Base active duty enlisted personnel do not qualify as government officers or law enforcement officers.

The Supreme Court nullified the conviction of a crime that was not charged in the indictment. "*No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. If, as the State Supreme Court held, petitioners were charged with a violation of 1* [and convicted of 2], *it is doubtful both that the information fairly informed them of that charge and that they sought to defend themselves against such a charge; it is certain that they were not tried for or found guilty of it. It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made.*" Cole v Arkansas, 333 US 196, 201 (1947), citations omitted.

16

"*Conviction upon a charge not made would be sheer denial of due process.*" De Jonge v Oregon, 299 US 353, 362. (1937); Dunn v US, 442 US 100, 106; Thornhill v Alabama, 310 US 88, 96.

Appellant has been prejudiced and has suffered irreparable harm because she has been deprived of liberty without due process of law. Appellant has been deprived of constitutional rights guaranteed by the 1st, 4th, 5th, 6th, 8th, and 14th Amendments.

## II. <u>APPELLANT WILL SUFFERED IRREPARABLE HARM IF STAY IS NOT GRANTED</u>

Appellant who have been threatened with addition malicious criminal prosecution, will suffer additional irreparable harm if stay and injunctive relief is not granted. As noted in Motion to Withdraw counsel for professional misconduct, a Pre-sentence report written with an ulterior motive to false imprison Appellant was submitted to Honorable Roger Vinson. The report falsified an arrest history; case numbers were fabricated to give an appearance that Appellant had a prior conviction.

  (probation officer),  Captain Michael Yoder and Captain Johanna Astel (prosecutors), and Appellant's trial counsel, Robert Augustus Harper attempted to have Appellant's name submitted to a DNA database; however, Honorable Roger Vinson did not have Appellant's name submitted (Exhibit 8). District court probation office is now threatening further criminal prosecution if Appellant does not submit to a DNA test (Exhibit 9).

Appellant is an outstanding citizen who never been convicted of a misdemeanor or a felony in her life. Appellant was forced into to trial without due process for leaving her purse at home.


65. Objection. Any sentencing determined should be determined only after the court has determined that a crime has been committed via a grand jury indictment or a preliminary hearing. A defendant should not be bounded by the court if the court lacks jurisdictions to try an offense. The citations received clearly indicate violations of FSS 877.01 and FSS 843.01 which are Florida State Offenses (citations attached). I did not waive a preliminary hearing. I did not waive a grand jury indictment.

Pursuant to 18 U.S.C § 3583(d)

The court shall order, as an explicit condition of supervised release, that the defendant cooperates in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of a2000.

This offense is **not** authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000

Pursuant to 42 USC 14135a. Section 3 (a) (2) supervised release shall collect a DNA sample from each such individual who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d))

This offense **does not meet the qualification** of a qualifying Federal offense (as determined under subsection (d))

Appellant forgot her purse at home.

Section 3(d) QUALIFYING FEDERAL OFFENSES.—(1) The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses under title 18, United States Code, as determined by the Attorney General:

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (A) Murder (as described in section 1111 of such title), voluntary manslaughter (as described in section 1112 of such title), or other offense relating to homicide (as described in chapter 51 of such title, sections 1113, 1114, 1116, 1118, 1119, 1120, and 1121).

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (B) An offense relating to sexual abuse (as described in chapter 109A of such title, sections 2241 through 2245), to sexual exploitation or other abuse of children (as described in chapter 110 of such title, sections 2251 through 2252), or to transportation for illegal sexual activity (as described in chapter 117 of such title, sections 2421, 2422, 2423, and 2425).

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (C) An offense relating to peonage and slavery (as described in chapter 77 of such title).

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (D) Kidnapping (as defined in section 3559(c)(2)(E) of such title).

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (E) An offense involving robbery or burglary (as described in chapter 103 of such title, sections 2111 through 2114, 2116, and 2118 through 2119).

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (F) Any violation of section 1153 involving murder, man-slaughter, kidnapping, maiming, a felony offense relating to sexual abuse (as described in chapter 109A), incest, arson, burglary, or robbery.

**Offense is not a qualifying Federal offense pursuant** to Section 3(d) (1) (G) Any attempt or conspiracy to commit any of the above offenses.

Appellant therefore will suffer additional criminal prosecution if a stay is not granted.

18

## III.  ANY HARM SUFFERED BY THE GOVERNMENT IS OUTWEIGHED BY ANY IRREPARABLE HARM TO THE APPELLANT

The irreparable harm already suffered by Appellant outweighs that which Eglin Air Force Base might claim. Appellant has been deprived of her constitutional Bill of Rights. Rights of Accused are protected by the fourth, fifth, Sixth and Eight Amendments. In addition to being deprived of the rights afforded to an accused Appellant has been deprived of her constitutional right guaranteed by the 1st and 14th Amendment.

## IV.  THE STAY WILL NOT BE ADVERSE TO THE PUBLIC INTEREST

*Congress shall make no law prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.*
*1st Amendment*

The interest of justice will never be served in light of an outcome that deprives one of liberty without due process of law. The public demands a stay when the outcome of a trial affects their constitutional rights guaranteed by the 1st, 4th, 5th, 6th, 8th and 14th amendments.

"**No one** wants to stand trial before there has been a determination of probable cause and **no one** wants to, or should, bear the expense and worry of defending against a frivolous charge" (http://www.lexingtonprosecutor.com/grand.htm )

"No one" meaning: minorities are inclusive. Nothing is more frivolous than being unlawfully arrested by one who lacks the power to arrest for forgetting one's purse at home and nothing is more vindictive than prosecuting outstanding citizens who have never been convicted of a felony or a misdemeanor in their life because they have stated that they are going to file a congressional complaint.

The problem with the armed forces is that **active duty** members rely too much on the old cliché that *rank has its' privileges*. Meaning: **active duty** members of the armed forces have a misconception that their human rights, rights, constitutional rights, and civil liberties are proportional to their rank. A person who is "pulling rank" is a person who is an active duty military member who is exercising his privileges over a lower ranking active duty military member.

This harsh an inhumane way of living will always present a conflict when the military try to maliciously impose their harsh beliefs on non military family members; and the conflict is even more greater when the non military family member is a civilian who does not fall under the UCMJ.

Civilians' human rights, rights, constitutional rights and civil liberties are **not** proportional to their active duty military spouse's rank. Their privileges remain the same whether they are *on* or *off* base. To be more specific: it does not matter if a civilian is married to an airman, enlisted service member or an officer; because, a civilian privilege is not defined by the UCMJ but by the laws of the State.

Article 1 Section two of the Florida State constitution provides in part that "*All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; .... No person shall be deprived of any right because of race*".
Equality is not defined by rank. All civilians are equally <u>important</u> under the laws of the state.

The public demands a stay where the outcome jeopardizes their fundamental constitutional rights which cannot be taken without due process of law. Convictions are based on crimes that are punishable by law and nothing more. And if the stay is not granted the public will be adversely affected.

## CONCLUSION

For all the foregoing reasons, the Court should grant appellant' Motion for Stay Pending Appeal.

Respectfully submitted this <u>26th</u> day of October 2005

Kaytrena J. Francis
501 Chinquapin Dr..
Eglin AFB FL 32542
850-651-8361
Appellant, Pro Se

20

**SECTION 1X - NARRATIVE**

On 10 Dec 2004, at approximately 1110 hrs, I, TSgt DILLON/POLICE-3, received radio notification from SFCC of a disgruntled customer at Bldg 810/Eglin Fitness Center who was refusing to leave the premises. Upon arrival I made contact with Whitness #1/1LT ESKRIDGE, Kee-Sha D./96SVS/SVMP/2-0479 who stated via AF Form 1168 that she had recieved a complaint from Capt YOUNG, Donna E./96 MDG/SGOS/3-8361 of Subject #1/FRANCIS, Kaytrena J./FM/W of MSgt FRANCIS, Shawn I./728 ACS/3-4516 not following the posted rules of the Fitness Center by allowing others to utilize the exercise equipment between exercise sets. ESKRIDGE further stated that FRANCIS became confrontational and rude when ESKRIDGE made contact and explained the Fitness Center rules which were clearly posted on the exercise room door. After making contact with ESKRIDGE I asked her to take me to FRANCIS. We found FRANCIS in Gym #1 shooting basketball alone. I made contact with FRANCIS and asked her to step outside of the facility in order to talk about the complaint. FRANCIS then asked why and moved her face within 2 inches of mine. I backed away and explained to her that there was a complaint about her not sharing fitness equipment. She then asked if this was about "the white lady calling me a nigger". We then entered the stretching area of the Fitness Center where I informed her we could talk about the situation. I again explained why we were there to talk about the complaint and she again moved her face within 2 inches of mine, again I backed off and explained to her there was no need to stand so close. She stated she was just trying to hear me so I elevated my voice in order for her to better understand what I was saying. I then asked her what her side of the story was when she verbally stated a white lady told her to get off the abdominal exersice machine. ESKRIDGE then inturrupted stating that was not the case and FRANCIS raised her voice to ESKRIDGE. I explained to ESKRIDGE to please allow FRANCIS to let her state her side and I explained to FRANCIS there was no need to raise her voice to the LT. FRANCIS continued to yell at ESKRIDGE and accused me of harrassment. At that time I asked FRANCIS for her ID card and she stated she did not have one. I asked if she had any identification authorizing her to be on the installation and utilize the Fitness Center and she stated it was at her house on Eglin AFB. I then asked if she had any identification at all on her person and she stated it was in her car. I then asked her if we could step out to her car and get her ID, she stated no and I must not know who she is. I told her that I did not know who she was and needed ID in order to verify her authorization to be on the installation. She then verbally stated her name and refused to leave the fitness center in order for me to identify her. I then explained I would be forced to apprehend her for Failure to Identify if she did not produce a military ID authorizing her access to the installation. She then crossed her arms and raised her voice stating she wanted the Flight Chief. I told A1C ARCHILLA/POLICE-3A to call for MSgt HENDERSON/POLICE-1. I also told her she was under apprehension for Failure to Identify and asked her to turn away from the sound of my voice. She said no. I professionally told FRANCIS 4 times to turn away from the sound of my voice and she refused. I then informed ARCHILLA to stand as over watch while I affected the apprehension. When I reached for her right hand she swung her left hand at ARCHILLA. I grabbed her right hand and ARCHILLA grabbed her left arm. She backed away from us into the wall and fell to a crouching position against a wall and screamed the word rape. I attempted to bring her right arm behind her back and ARCHILLA held on to her left arm. FRANCIS continued to resist and fight the apprehension. I then positioned my body to bring her to the ground in order to finish applying the hand cuffs. At that time FRANCIS attempted to bite my right hand that was holding her right hand. I told her not to bite me and she removed her mouth from my hand and went to the ground where she continued to fight the application of hand cuffs. FRANCIS continually told us to get off of her and we had no idea who we were messing with. Once the first hand cuff was applied to her right hand she stated I had broken her watch and to please remove it. We continued to fight her left hand behind her back and applied the second hand cuff. I then removed her watch and placed it in front of her where she could clearly see it. ARCHILLA then informed me POLICE-1 had arrived and I told him to bring POLICE-1 to the stretching area while I kept FRANCIS under control. Once MSgt HENDERSON/POLICE-1 and TSgt ANGLIN/Police-7 arrived we brought FRANCIS to her feet. MSgt HENDERSON and TSgt ANGLIN transported her to the SFCC. SSgt THUESON/SFOI advised FRANCIS or her rights in accordance with the 5th Amendment of the U.S. Constitution. FRANCIS waived legal counsel and stated via AF Form 1168 an unknown white female approached her while she was utilizing an abdominal machine in the Fitness Center who wanted her to stop her workout in order to use the machine. FRANCIS futher stated when ESKRIDGE approched her and asked her to leave the facility or she would contact Security Forces. FRANCIS then stated she asked ESKRIDGE to call Security Forces because she felt she had done nothing wrong. FRANCIS was released to MSgt FRANCIS.

Chad T. Dillon, TSgt, USAF
Patrolman, 96 SFS/SFOA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THE UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                     Case No. 3:05cr27-RV

KAYTRENA J. FRANCIS,

       Defendant.
_____/


TRANSCRIPT OF FIRST DAY OF TRIAL


      The above-entitled matter came on to be heard before
the Honorable ROGER VINSON, Senior United States District
Judge, in the United States Courthouse, Pensacola, Florida, on
the 6th day of June, 2005, commencing at 9:01 a.m.


APPEARANCES:

For the Government:   MICHAEL YODER and
                 JOHANNA ASTLE
                 Special Assistants United States Attorney
                 21 East Garden Street, Suite 400
                 Pensacola, FL 32502-5675

For the Defendant:   ROBERT AUGUSTUS HARPER, JR. and
                 JONATHAN M. KESTER
                 Attorneys at Law
                 300 West Park Avenue
                 Tallahassee, FL   32301

W.PAUL RAYBORN
United States Court Reporter
245 U.S. Courthouse
One North Palafox Street
Pensacola, FL 32502-5665
T.850.432.1808 - F.850.432.1809
prayborn@bellsouth.net

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


THE UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                    Case No. 3:05cr27-RV

KAYTRENA J. FRANCIS,

                Defendant.
                                  /


                TRANSCRIPT OF SECOND DAY OF TRIAL


        The above-entitled matter came on to be heard before
the Honorable ROGER VINSON, Senior United States District
Judge, in the United States Courthouse, Pensacola, Florida, on
the 7th day of June, 2005, commencing at 9:01 a.m.


APPEARANCES:

For the Government:    MICHAEL YODER and
                      JOHANNA ASTLE
                      Special Assistants United States Attorney
                      21 East Garden Street, Suite 400
                      Pensacola, FL 32502-5675

For the Defendant:    ROBERT AUGUSTUS HARPER, JR. and
                      JONATHAN M. KESTER
                      Attorneys at Law
                      300 West Park Avenue
                      Tallahassee, FL    32301


                    W.PAUL RAYBORN
              United States Court Reporter
                  245 U.S. Courthouse
                One North Palafox Street
                Pensacola, FL 32502-5665
            T.850.432.1808 - F.850.432.1809
                prayborn@bellsouth.net