Kaytrena J. Francis
1467 7th Ave #105
San Francisco Ca. 94122
415 971-5049
kaytrenaf@yahoo.com
Plaintiff



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Kaytrena J. Francis,

    Plaintiff,

v.

UNITED STATES OF AMERICA et al,
    Defendants.

Case Number: CV07-06125 JSW
**CASE MANAGEMENT STATEMENT**

Honorable Jeffrey S. White

Case Mgmt. Conf Date: Sept. 5, 2008
Case Mgmt: Conf Time: 9:00 a.m.

Plaintiff Kaytrena J. Francis, pro se submits this case management statement and proposed order in the above-entitled action

1. **Jurisdiction and Service**: The basis for the court's subject matter jurisdiction over plaintiff's claims

This court has jurisdiction over the subject matter over plaintiff's claims pursuant to
- 28 U.S.C. § 1331 - federal question
- 28 U.S.C. § 1332 (a)(1) - citizens of different States
- 28 U.S.C. § 1343 - civil rights and elective franchise
- 28 U.S.C. § 1346(b)(1) - United States as a Defendant
- 28 U.S.C. § 1367(a) - Supplemental jurisdiction or pendant jurisdiction
- 42 U.S.C. § 1981 – Equal Rights under the law
- 42 U.S.C. § 1983 - civil action for deprivation of rights
- 42 U.S.C. § 1985(3) - conspiracy to interfere with civil rights
- 42 U.S.C. § 1986 – action for neglect to prevent
- 42 U.S.C. § 1988 - proceedings in vindication of civil rights
- 28 U.S.C. § 2201 - Declaratory Judgment Act
- 18 U.S.C. § 2202 - further relief available
- 18 U.S.C. § 241- conspiracy against rights
- 18 U.S.C. § 242 - deprivation of rights under color of law
- 18 U.S.C. § 1964 - civil RICO
- 28 U.S.C. § 2679(b)(1)

This court has jurisdiction over the subject matter of this complaint pursuant 18 U.S.C. §§ 1001,1341, 1342, 1343, 1361, 1961 (and statutes cited therein) through 1967, Federal Tort Claims Act, Bivens doctrine, and Fed. R. Civ. P. Rule 65(a)(2).

a) The following personal jurisdiction issues are scheduled be heard on September 5 2008:

1. Whether the court have specific jurisdiction over both Robert Augustus Harper and David Sellers who are both co-conspirators and RICO participants to Defendants who purposely directed their intentional tortuous conduct, conspiracy to kidnap or murder Francis, and RICO criminal activities at Francis San Francisco resident.

2. Whether the court has specific jurisdiction over Randee Golder who availed herself to San Francisco California by doing business with Francis and who insured the false imprisonment of Francis at FCI Dublin for the US courts of Florida by having Francis contacted Josh Libbey at the United States Courts in San Francisco on a daily basis.

3. Whether the court have specific jurisdiction over Federal Public Defenders Chet Kaufman, Charles Lammers, and Randolph Murriel who are co-conspirators and RICO participants to who purposely directed their intentional tortuous conduct, conspiracy to kidnap or murder Francis, and RICO criminal activities at Francis San Francisco resident.

b) The following venue issues are scheduled to be heard on September 5, 2008:

1. Whether Venue is proper for Chet Kaufman, Charles Lammers and Randolph Murriel who purposely directed their conspiracy to

2. Whether venue is proper in San Francisco if Plaintiff litigation results from injuries arising out of, relating to, those tortuous or criminal activities by Defendant(s) Chet Kaufman, Charles Lammers, and Randolph Murrell purposely directed at Plaintiff's San Francisco resident.

3. Whether venue is proper in San Francisco if Plaintiff litigation results from injuries arising out of, relating to, those tortuous or criminal activities by coconspirators Robert Harper, David Sellers, et al purposely directed at Plaintiff's San Francisco resident.

4. Whether venue is proper in San Francisco if Plaintiff litigation results from injuries relating to her doing business with Randee Golder in San Francisco California.

**Service**

1. Defendants have not complied with Fed. R. Civ. P 26 in providing Plaintiff with initial disclosures.

2. Plaintiff has had to contend with inter alia; extensive hours of locating Defendants, multiple service attempts for the same Individual due to address changes; Defendants avoiding Service process by lying about they do not live where the records reflect they are receiving homestead benefits; Defendants denying that they are not the person being served; Defendants refusing to accept service process; and Defendants running from service process.

3. Service Process was not affected on Defendant(s) 1Lt Kee-sha D. Eskridge, A1C Jason Archilla, MSgt Edward Shepherd, and Capt. Donna E. Young.

4. Defendant Kee-sha Eskridge is believed to be moving from state to state with a person named "Chris"; Defendant Jason Archilla is believe to have fled to Puerto Rico after receiving a true copy of the complaint via certified mail on March 24 2008; Multiple service attempts were made on Defendant Edward Shepherd at his Florida address 1950 Jamaica Dr Navarre, Fl 32566, where he receives homestead benefits. Shepherd was later discovered to have an overseas address of PSC 2 Box 6285, APO AE 09012, however, Shepherd refused service process via certified mail with return receipt on June 30 2008. Plaintiff has not been able to get a valid address for Donna Young who has retired from the United States Air Force.

5. All other Defendant(s) named within Plaintiff's complaint have been served.

**Facts:**

a) The following chronology of the facts was taking from Plaintiff's complaint:

62. December 10 2004: Francis went to Eglin Air Force base gym to work out. While working out on an abdominal machine, Francis was harassed by Maj. Young who wanted Francis to stop in the middle of her workout and let her workout. Francis told Maj. Young that she would be done in a minute. Maj. Young stood there starring Francis down looking for a confrontation.

63. After Young realized that Francis was ignoring her she left the nautilus room and ran around looking for someone to harass Francis.

64. Approximately 10 minutes later while Francis was working out on a leg machine Maj. Young return to the nautilus room with an Airman and stood there starring Francis down to the point where Francis got up and relocated to another machine to workout.

65. Several minutes and machined later while Francis was on a hip reduction machine, Lt. Eskridge approached Francis and told her that Maj. Young accused Francis of not being fair with the abdominal crunch machine. Francis explained to Eskridge that she was only doing one superset and was in the middle of working out when Maj. Young approached her.

66. Eskridge refused to listen. Lt. Eskridge insisted on taking sides with Maj. Young who outranked her. Eskridge kept telling Francis that Maj. Young said that Francis was not working out.

67. While speaking with Lt. Eskridge Francis notice Young standing behind her and asked Young to please stay away from her because she was a very rude person. Young refused to leave and stood there, pulling rank on Lt. Eskridge insisting that she do something to Francis.

68. Eskridge tried to incite a fight; she told Francis that she did not like Francis addressing her by her rank of Lieutenant.

69. Francis asked what's wrong with her addressing Eskridge by the rank of Lieutenant since that was the rank that she was wearing. Eskridge stated that Francis could address her by Keisha Eskridge and Francis replied fine, and said Eskridge could address Francis as Mrs. Francis.

70. After Francis refuse to stoop to Eskridge level and fight with her Eskridge told Francis that she was going to throw her out of the gym because Young accused Francis of not being fair with the gym equipment and if Francis did not leave she was going to call Eglin Air Force Base Security Forces.

71. Francis asked Eskridge to call the Security Forces because she had done nothing wrong and wanted to report Young for harassing her and informed Eskridge that she was going to wait for the Security forces to arrive. In addition, Francis requested the name of the services commander so she could file a complaint with services concerning the way she had been unfairly treated.

72. Eskridge snapped that she was the head of operations and any complaint Francis wanted to make could be made with her.

73. Francis left the nautilus room and went and sat on a bench in the basketball court to wait for the Security Forces to arrive.

74. Eskridge retaliated against Francis for asking for the name of the services commander; she called the Security Forces and maliciously, intentionally, and willfully falsified that she had a belligerent gym patron that was refusing to leave the gym.

75. Security Forces Airman, TSgt Dillon and A1C Archilla arrived in a hostile manner. Dillon approached Francis and stated that he wanted to talk with Francis about the problem she had.

76. Francis responded that she did not have a problem. TSgt Dillon and A1C Archilla escorted Francis to a private area in the gym. Eskridge and MSgt shepherd followed.

77. Once in the private area, Dillon said that he had already heard Young's version and he would hear Francis version of what happened.

78. When Francis attempted to inform Dillon that she had been harassed by Maj. Young, Lt. Eskridge prevented Francis from speaking with Dillon by interrupting and telling Dillon that Francis was not sharing the abdominal machine according to Maj. Young.

79. MSgt Shepherd told Dillon that Francis did not belong on the base.

80. Dillon asked Francis if she belong on base and Francis said yes she live in base housing with her active duty military spouse, MSgt Francis at 501 Chinquapin Dr.

81. Dillon asked Francis if she had her id card and Francis stated that she forgot her purse at home and asked Dillon to call her active duty military spouse who was at work on Eglin Air Force to ask him to bring her purse from home.

82. MSgt. Shepherd instigated an unlawful arrest by chanting that Dillon was going arrest Francis for forgetting her id card at home.

83. After several requests were made to Dillon to contact Francis active duty military spouse were met with negative results Francis asked Dillon radio his flight chief to ask him to contact her active spouse to let him know that she had forgotten her purse at home.

84. Dillon refused. He stated he was not going to call anyone and was going to arrest Francis for forgetting her purse at home.

85. Dillon then looked at Archilla, Sheppard who was chanting arrest her.

86. Francis was assaulted by Dillon and A1C Archilla, Dillon grabbed Francis by her breast and A1C Archilla grabbed Francis between her legs; they picked Francis up, slammed her down on a hard floor, and handcuffed her hands behind her back. Afterwards Dillon sat on Francis back wearing a loaded gun which was poking in Francis kidney for over ten minutes

87. MSgt Shepherd stood over Francis raping her with his eyes as he starred at Francis ass; while Lt. Eskridge watched with approval.

88. Francis suffered injuries to her leg and arms (Exhibit) as a result of Dillon and Archilla assault.

89. Several minutes later TSgt Dillon's Flight Chief, MSgt Henderson arrived with TSgt Anglin and found Dillon sitting on Francis who was handcuffed with her hands behind her back. Henderson told Dillon to get off Francis and to let her up.

90. Henderson asked Francis what happened. However, Francis was not allowed to speak because Eskridge and Sheppard interrupted and lied that Francis was not being fare with an abdominal machine.

91. Anglin used excessive force, he acted with deliberate indifference to Francis injuries by grabbing her by her injured arms, yanking them to the extent where he further aggravated the injury caused by Dillon and Archilla while to Security Forces police vehicle.

92. Francis was taken to the Security Forces building and locked in room and was not was not allowed to called her spouse.

93. Francis asked to go to the hospital to have her injuries tended to and the Eglin AFB military Security Forces refused to take her to the hospital.

94. Francis requested to file a complaint against TSgt Dillon and A1C Archilla for arresting her without probable cause (Exhibit 2); and Henderson said that he was not going to allow Francis to file a complaint.

95. After Francis made a statement to the Security Forces that she is a registered voter who followed the law; did not have any traffic citations; and was going to file a congressional complaint against Eglin Air Force base for refusing to allow her to file a complaint against TSgt Dillon for violating her Fourth Amendment right TSgt Dillon retaliated against Francis by giving her two violation notices citing Florida State Statues Florida State Statues 877.03 (Resisting an arrest with violence) and 843.01(Disorderly Conduct) (Exhibit 3).

96. Approximately three hours past before the Security Forces contacted Francis active duty military spouse to inform him that they were holding Francis at Eglin Air Force base Security Forces facility in a locked room

97. When Francis spouse arrived at the Security Forces station the Security Forces did not ask him to get Francis id. A mere visual identification was all that was requested of him. He was asked if Francis was his wife and then Francis was released.

98. Prior to Francis getting released her spouse noticed her injuries and asked Henderson to take Francis to the hospital; Henderson refused and told Francis spouse that he could get Francis to the hospital on his own.

99. Francis filed a congressional complaint against Eglin Air Force base.

100. On or about March 3, 2005 a civil rights organization met with Eglin AFB to find out how did it go from Francis working out at the base gym to getting arrested without probable cause and injured by Dillon and Archilla.

101. According to the civil rights mediator they found the base unresponsive and insensitive to the unlawful arrest. Lt. Eskridge was reported as saying that she felt that she had a right to have Francis arrested because she did not like Francis addressing her by her rank of Lieutenant; and Maj. Farrar was reported as saying that he was going to push the incident as far as he can.

102. On or about March 7, 2005 Francis received in the mail a Notice to appear (Exhibit 4) in the United States District court of the Northern District of Florid, Pensacola Division on March 16, 2005 for the violation notices she received from TSgt Dillon on December 10, 2004 which cited Florida State Statues 877.03 and 843.01 (Exhibit 3).

103. March 11, 2005, Capt. Yoder Eglin Air Force Base retaliated against Francis for seeking help from a civil rights organization by getting Stephen Preisser to get Gregory Miller to sign a felonious Information (Exhibit) alleging an offense congress has not enacted .Afterwards they filed the felonious information in the magistrate court under simple assault, case no.3:05mj80 (Exhibit 7).

104. March 16, 2005: Francis arrived in the Magistrate Court without counsel to respond to the violation notices citing Florida State Statues (Exhibits). Magistrate Judge Davis asked U.S. Air Force Staff Judge Advocate, Captain Michael Yoder what's the charge. Capt. Yoder read from the felonious Information (Exhibit 7)

- *That on or about December 10, 2004, in the Northern District of Florida, and within the special maritime and territorial jurisdiction of the United States, to wit: Eglin Air Force Base, Florida, the defendant Kaytrena J. Francis, did forcibly assault, resist, oppose, impeded, intimidate, and interfere with Technical Sergeant Chad T. Dillon and Airman First Class Jason Archilla, United States Air Force Security Forces Officers, while they were engaged in their official duties, in violation of Title 18, United States Code, Section 111.*

- *That on or about December 10, 2004, in the Northern District of Florida, and within the special maritime and territorial jurisdiction of the United States, to wit: Eglin Air Force Base, Florida, Kaytrena J. Francis, did engage in conduct as to constitute a breach of peace or disorderly conduct, in violation of Florida Statue 877.03, and Title 18, United States Code, Section 7 and 13.*

105. Magistrate Davis asked Yoder what was the classification or level of the offense and Yoder falsified that it was a class 'A' misdemeanor with a maximum imprisonment term of one year and a maximum fine of $100,000.00.

106. Magistrate Davis looked at Francis, observed that she was an African American and asks how do you plea. Francis replied not guilty.

107. Davis tells Francis that she can either have her trial heard by a magistrate Judge or a District Judge and asks Francis who she wanted to hear her trial. Francis who never been convicted of a misdemeanor or felony in her life did not know how to answer the question.

108. Davis asks a public defender who is working in the court to step outside with Francis to help her with her decision. The Public Defender tells Francis that a district Judge would normally not hear this type of case and suggests that Francis allow Davis to hear the trial Francis returns unsure, hesitates and says that she will allow Davis to hear the trial. Davis says that when you find an attorney he can changed where the trial will be heard and schedules a trial before him in the magistrate court.

109. Francis is told that she needs to notify the court when she finds an attorney. Francis asks for a copy of the government discovery to give to an attorney when she finds one.

110. March 17 2005: The Magistrate courts sent Francis a reminder letter to find an attorney (Exhibit 8).

111. March 21 2005: Francis emailed David Sellers (Fl. bar No, 338281) and asked him for legal representation (Exhibit 9/10). Sellers informed Francis that he is out of the country (in Italy) until April 1, 2005 and instructs Francis to go see his partner Eric D. Stevenson.

112. March 24 2005: Stevenson informed Francis that the charges in the information required a grand jury investigation and filed a request for a trial by jury before a District judge on Sellers behalf (Exhibit 11) with the understanding that a grand jury will investigate and would have to establish probable cause before Francis could be tried for the alleged offense.

113. April 6, 2005: Francis met with Sellers after he returned from his trip to Italy. Sellers told Francis that no grand jury would indict her on the charges in the Information and said that he would contact Eglin AFB and speak with them.

114. On or about April 20, 2005 Sellers called Francis and asked Francis if she would be interested in a Pre-trial Diversion Program. Francis asked Sellers what was a Pre-Trial Diversion program. Sellers said that it's where the government will ask you to agree to do certain things and if you do them, the government will not bring charges against you. Francis responded that she will not negotiate because TSgt Chad Dillon and A1C Archilla had violated her Fourth Amendment right when they arrested her without probable cause on December 10, 2004 for forgetting her purse at home.

115. Francis demanded a grand jury investigation to establish probable cause.

116. April 27, 2005: Capt. Yoder asked Sellers to see if Francis would sign a waiver of speedy trial right. After researching a *Waiver of Speedy Trial* on the Internet, Francis refused to sign the waiver because no complaint had been sworn against her and she had not been indicted by a grand jury. Francis called Sellers and told him that she will not sign a waiver of speedy trial and no one will sign one for her and again demanded a grand jury investigation to establish probable cause. Sellers threatened Francis that she should be careful for what she asks for.

117. April 28, 2005: Capt. Yoder and Capt. Astle retaliated against Francis for refusing to sign the waiver of speedy trial right. Capt. Yoder maliciously abused a legal process by filing a continuance to force Francis to trial knowing that Francis did not waive her fifth Amendment right to a grand jury indictment; she did not negotiate a plea bargain to the Information (Exhibit) that he filed under simple assault in the magistrate court; and no complaint, information, or indictment was ever sworn against Francis alleging an offense of 18 U.S.C. 111.

118. The case number was changed from 3:05mj80 to 3:05 cr-00027 RV. An arraignment was set for June 2, 2005 (Exhibit 12) without a complaint ever being filed against Francis; a complaint presented to a grand jury for investigation, or an indictment; and a trial was scheduled before a misdemeanor jury on June 6, 2005.

119. Sellers called Francis and asked her to prepare for trial.

120. Francis asked Sellers how Captain Yoder got a case number without a grand jury investigation, a complaint being file, or probable cause ever being established. Sellers informed Francis that Capt. Yoder made a call to Senior District Judge Roger Vinson and asked him for a favor. Vinson granted Capt. Yoder a favor by giving him a criminal case number and scheduling a trial in the District court before him.

121. April 28 2005 In addition to granting the case number as a favor, Vinson knowingly, intentionally, and maliciously falsified that Francis was charged with *forcibly assault, resist, oppose, impeded, intimidate, and interfere ... in violation of 18 U.S.C. 111* (Exhibit 12).

122. Francis asked Sellers to file a motion to dismiss because she appeared in the District court for violation notices citing Florida State Statues (Exhibits) and she wanted a grand jury investigation to establish probable cause for the Information that Capt. Yoder filed under simple assault and he refuse to file a motion to dismiss. Disappointed, Francis found another attorney, Robert Augusta Harper (Fl. bar No.127600).

123. A congressional complaint was filed with the local congressman Jeff Miller.

124. May 5, 2005 Francis met with Harper in his office. Harper is given the violation notices, the notice to appear, Capt. Yoder's Discovery, and the Information Francis received when she appeared in court on March 16, 2006 for the violation notices citing Florida State Statues. Harper informed Francis that he did not think the government could upgrade the charge to the offense in the Information.

125. Harper checked online and told Francis that she was not being charged with the offense in the Information, she was being charged with simple assault. Harper asked Francis if she still wanted representation and Francis said yes because she did not assault anyone, she was the victim and on March 16 2005, Capt. Yoder did not say anything about simple assault, he read the charges in the Information and her previous attorney's partner told her that the charge alleged in the Information required a grand jury investigation and she wanted a grand jury investigation to establish probable cause before going to trial.

126. May 10, 2005, Harper filed a Notice of Appearance under the case number 3:05mj80 (Exhibit 14).

127. May 13, 2005 Capt. Yoder told Harper that he was going prosecute Francis who did not fall under Military Jurisdiction with the felonious case number that Vinson gave him and got Harper to re-file a second Notice of Appearance under case number 3:05 cr-00027 RV .

128. Francis asked Harper to file a motion to dismiss because he had not been indicted by a grand jury; and she wanted a grand jury investigation to establish probable cause; moreover, Francis did not fall under military jurisdiction.

129. May 23, 2005: Staff Judge Advocates, Capt. Astle, Capt. Yoder, conspired with Francis attorney, Harper, and Roger Vinson to false imprison Francis; they convinced Harper to falsify the *Memorandum of Law in Support of Defendant's Motion to Dismiss with Prejudice Pursuant to Violation of the Speedy Trial Act* (Exhibit 16). Harper falsified the memorandum by alleging over thirty (30) times that an Indictment had occurred knowing that his purpose for writing the motion to dismiss was because Francis had not been indicted by a grand jury and wanted a grand jury to investigate the Air Force false Allegations to avoid going to trial for forgetting her purse at home.

130. May 25, 2005: Eglin Air Force base is investigating the Francis' congressional complaint. Maj. Farrar sends a letter to Francis' active duty military spouse commander to concerning the congressional complaint (Exhibit 44).

131. May 31, 2005: Senior District Judge Roger Vinson falsified his order (Exhibit 17) denying the motion to dismiss. Vinson falsifies that a violation noticed cited Francis for 18 U.S.C. 111 and the offense as alleged in the Information that Capt. Yoder filed under simple assault was Class A Misdemeanor.

132. June 2, 2005: Francis did not have an arraignment. Capt. Yoder and Capt. Astle convinced Harper to keep Francis away from the district court until the forced trial. Harper told Francis the arraignment was a plea bargaining hearing and stated that they were not going to go to it because he knew how strong Francis felt about her innocence. Francis asked Harper to inform Judge Vinson that she had not had a grand jury investigation and that the violation notice did not cite her for 18 U.S.C. 111 and Harper refused. Harper told Francis that Vinson already knew what the case was about.

133. June 3, 2005: Francis took Harper a copy of her Dental x-rays. Harper faxed a copy of Francis' Dental records to Capt. Yoder to be entered as trial evidence (Exhibit 43). Harper showed Francis sample of jury instruction for FBI Agents (Exhibit 18). Francis tells Harper that she does not want the jury instructions used because TSgt Dillon and A1C Archilla are not FBI agents. Harper said he knew that TSgt Dillon and A1C Archilla were not FBI agents and the jury instruction was only a sample.

134. June 4, 2005: Capt. Yoder and Capt. Astle tried to steal Francis DNA to put it in a DNA database with murderous and other criminals that have committed heinous crimes. They set up a Dental appointment for Francis with the intent to get a DNA swab. Francis refuses the Dental appointment.

135. June 6, 2005: Harper and Vinson allowed Capt. Yoder use a peremptory strike to remove juror of Francis race off the jury on the account of her race being African American.

136. Vinson allowed Capt. Yoder to prosecute Francis, a civilian who did not fall under military jurisdiction for a felony charge, 18 U.S.C.111, in his court before a misdemeanor jury knowing that: (1) Francis had not had a preliminary hearing or preliminary examination to established probable cause (2) that a US Attorney from the Department of Justice did not negotiate with Francis a plea agreement; (3) Francis did not plea to the Information; (4) Capt. Yoder was a staff judge advocate; (5) he gave Capt. Yoder the criminal case number as a favor; (6) Francis did not waive her Fifth Amendment right to a grand jury indictment; (7) Francis had not been indicted by a grand jury; and (8) Francis did not have an arraignment (9) Congress did not enact 18 USC 111 within the special maritime of Eglin Air Force Base (10) No complaint had ever been filed or sworn against Francis for an offense of 18 USC 111 or any offense against the United States (11) Francis had appeared in the District court to respond to violation notices citing Florida State Statues.

137. Capt. Yoder told the misdemeanor jury after reading the felony offense in the Information that Francis was being charged with a class 'A' misdemeanor.

138. June 7, 2005: Vinson, Harper, and Capt. Yoder deliberately misrepresented TSgt Chad Dillon and A1C Archilla as federal law enforcement officers; the jury instructions for FBI agents (Exhibit 18) were used knowing that active duty enlisted service members are not FBI agents. The misdemeanor jury was given a menu checklist which included forcibly assault, along with every other offense in 18 U.S.C. 111. Vinson told the misdemeanor jury that the Eglin AFB gym building could be substituted for the public since it had a parking lot and cars were parked in the lot.

139. The misdemeanor jury acquitted Francis of forcibly assault which resulted in an acquittal in the force unconstitutional trial.

140. June 29 2005: Francis files a congressional inquiry with hometown Senator Barack Obama informing him that Capt. Yoder was trying her in a district court knowing that she did not fall under military jurisdiction (Exhibit 38).

141. July 5, 2005: the Lt. Col Smith of Eglin AFB falsified his congressional response to Jeff Miller: Smith falsified that Eglin Air Force base did not changed the charges to federal charges to force Francis into a federal court and falsified that Francis was convicted of resisting arrest with violence (Exhibit 37).

142. July 19, 2005: Capt. Yoder, Capt. Astle, Harper, and Vinson conspired with Bryan Jansen to falsify the pre-sentencing report. Jansen prepares the pre-sentencing investigation report with an ulterior purpose to false imprison Francis. The report falsified that Francis had legal representation when Magistrate Judge Davis asked Francis to plea. Francis knew that she was being charged with a felony. Altered the offense language to make it appear that a crime had been committed against a select official and to conceal the United States Air Force involvement in the forced trial, criminal case numbers were fabricated to give an appearance that Francis had been convicted of a prior crime and the criminal value of none and class 'A' misdemeanor were made to appear as clerical errors in the report. Francis is an outstanding citizen who never been convicted of a misdemeanor of felony in her life. She was forced to trial without a waiver of a grand jury indictment, negotiating a plea or having an arraignment.

143. July 27, 2005: Harper maliciously lied to Francis that a misdemeanor jury had convicted her of a felony.

144. Aug 5, 2005: Lt. Col. Smith falsified his congressional response to Senator Obama. Lt. Col. Smith falsified that Francis was tried in the magistrate court; tried for misdemeanor offenses; was convicted of assault; and Eglin AFB had nothing to do with the trial knowing that Francis was not convicted of assault and Capt. Yoder and Capt. Astle prosecuted Francis before Chief District Judge Vinson (Exhibit 39).

145. August 16 2005: Francis called the District court and asked what charge was being put on her record. The court stated that it looked like someone had waived a preliminary examination and elected to go before a misdemeanor jury for a felony charge.

146. August 17, 2005: Francis sent a certified notarized letter to Vinson letting him know that he had allowed Capt. Yoder to try her for a violation noticed, 18 U.S.C. 111 that she did not have and Harper had informed her that a misdemeanor jury had convicted her of a felony (Exhibit 19).

147. Aug 19 2005 Francis faxed Senior District Judge Roger Vinson objections to the PSR.

148. Aug 23, 2005 Harper, Captain Astle, and Jansen claim that they were not trying to put a felony on Francis record. Capt. Astle said that the case was a simple assault case and acknowledged that Francis was acquitted of assault. Francis informed Vinson that the violation notices cited her for Florida State Offenses. Astle said that she changed the charge and it was one she could have changed it to. Vinson said so they filed an Information knowing that Francis had never pleaded to the Information.

149. Francis asked to go over the PSR and Vinson refused to let Francis go over the PSR or to accept Francis objections (Exhibit 21) Vinson stated that he like Harper's report better knowing that Harper response had been falsified.

150. When Francis said all she did was file a congressional complaint, Capt. Yoder cried teach her a lesson. Vinson looked at Capt. Yoder and shook his head with the intent to warn her that she was saying something that shouldn't go in the court transcripts.

151. Vinson knowingly deprived Francis of two years and one month of liberty without due process of law for an offense of 18 U.S.C. 111 that and stated that he was sealing his reason(s) for sentencing Francis.

152. August 25, 2005: Vinson entered a final judgment for 18 U.S.C. 111 with an ulterior motive to false imprison. The offense language was falsified or altered to: give an appearance that Francis had been convicted of 18 U.S.C. 111 with the intent to conceal that he had allowed active duty Air Force military Staff Judge Advocates Yoder and Astle to forcibly prosecute Francis before a misdemeanor jury for a felony alleging an offense of 18 U.S.C. 111 within the Special Maritime to wit Eglin Air Force Base which congress has not enacted into law; and to conceal Francis' acquittal [1] in the forced trial; or to conceal his actions taken in the clear absence of all jurisdiction.

---

[1] Since the misdemeanor jury did not find Francis guilty of forcibly assault, the other offenses alleged in the Information failed because the logical conjunction "and" was used in the language of the Information. A

153. Vinson knowingly, willing and deliberately falsified his Judgments entering resisting, impeding, "or" interfering with certain officers.

154. August 31, 2005: Francis filed her noticed to appeal pro se appealing the falsified conviction along with every motion filed in the trial (Exhibit 23).

155. October 5, 2005: Francis filed a motion to withdraw counsel for professional misconduct in the Eleventh Circuit and asked to precede pro se on her appeal. Eleventh Circuit ordered the district court records (Exhibit 26).

156. October 26, 2005, Francis filed a motion to stay in the district court (Exhibit 28).

157. October 28, 2005: Vinson denies the Motion to Stay (Exhibit 29)

158. In the interim Easterling was brought in to harass Francis on a continuous basis; false imprisonment tactics; kidnapping or murder attempts were used to deter or prevent Francis from accessing the court.

159. W. Paul Rayborn joined the conspiracy and falsified, tampered, or altered the court transcripts. Rayborn falsified Capt. Yoder and Capt. Astle address as being the same as Stephen Preisser with the intent to make it appear that Francis was prosecuted by someone who worked for the United States Department of Justice; with the intent to conceal that Francis was prosecuted by active duty military Staff judge advocates (Exhibit 40)

160. Capt. Yoder and Capt. Astle address is 501 Van Matre on Eglin Air Force Base. They are active duty members of the United States Air Force and they did not have jurisdiction over Francis, a civilian to prosecute her for a felony.

161. November 7, 2005: Vinson retaliates against Francis for filing a motion to stay, and the Motion to Withdraw Counsel by signing a falsified probation violation petition for 18 U.S.C. 111 filed by Easterling on November 3, 2005, knowing that the sentence of Probation was unconstitutional or illegal or unlawful (Exhibit 30).

162. November 17, 2005: Capt. Yoder, Capt. Astle, Vinson, and Preisser conspired to hold onto the probation violation petition until the last minute for the purpose of denying Francis adequate time to prepare for the probation violation petition. The summons to appear in court on November 21 2005 was faxed to an office on Eglin AFB (Exhibit 30) and to Francis active duty military spouse job to give to Francis when he got home.

163. November 21, 2005: Francis appeared before Magistrate Judge Miles Davis; Davis has Francis wait until his courtroom is cleared. Afterwards Francis is threatened with jail over Thanksgiving Holiday if she does not accept Public Defender Charles Lammers for legal representation. After Francis allow Lammers to be forced on her, Davis holds a probable cause hearing and tells Francis that he found probable cause that she violated the unlawful probation and she will be going before Vinson for a revocation hearing. Francis is ordered to call Easterling everyday until the probation violation revocation hearing.

164. November 28, 2005: Francis phoned Easterling who inform Francis that she needs to be in court in the Morning for the revocation hearing.

165. November 29, 2005: Vinson false imprisons Francis for two days in the county jail to prevent or deter Francis from further attempting to appeal the falsified conviction (Exhibit 31).

166. December 6, 2005: Harper is removed by the 11th Circuit; 11th Circuit Judge Dubina concealed that the fact that he was removed for professional misconduct in their order removing Harper. A court appointed attorney is forced on Francis against Francis request to represent her in a case where every legal document had been falsified. (Exhibit 32)

---

logical conjunction "and" can only return a result of true if and only if all its operands are true. Whereas a logical disjunction "or" can be true if some of its operands are true.

167. December 1, 2005: Capt. Astle conspires with Easterling to send Francis harassment letters attempting to force Francis to unwarranted mental health treatment.

168. December 8, 2005: Capt. Yoder, Capt. Astle conspired with Easterling to send Francis another letter scheduling a mental health appointment for Francis with David Hubbard on December 22, 2005. The appointment was deliberately scheduled to harass Francis doing the holidays

169. On or about December 12 2005 Francis called the Eleventh circuit and spoke with Pam Holloway who told her that she had to write a Motion to Proceed Pro Se on appeal knowing that Francis had already requested to proceed pro se in her Motion to Withdraw Counsel for Professional Misconduct.

170. December 20, 2005: Francis filed a motion to proceed pro se on appeal (Exhibit 33).

171. December 22, 2005 Francis went to the Bridgeway center with her spouse and found Easterling speaking with David Hubbard whom she had asked to examine Francis.

172. Francis informed the David Hubbard that she was there against her will and did not wish to speak with him

173. January 6, 2005: 11th Circuit Judges Dubina and Hull block Francis access to Eleventh Circuit by refusing to allow Francis to file pro se knowing that every document has been falsified in Francis case (Exhibit 34) and sends a copy to Chief Appellate Civil Division counselor, E. Bryan Wilson, alias Bryan E. Wilson.

174. Jan 10, 2006: Immediately after Lammers see that the Eleventh Circuit has agreed to cover up the conspiracy to false imprison Francis; he conspired with Capt. Yoder, Capt. Astle and Easterling to try to force Francis take an unlawful DNA test.

175. January 18, 2006: Captain Astle gets Easterling to force Francis to go to Bridgeway center for a mental health evaluation in absence of need for mental health treatment. While at the Bridgeway Center Francis refused to sign papers that she would agree to be a patient of the center. The doctor assistance called United States Probation Office and informed them that Francis refused to sign the papers.

176. Feldman gets on the phone, he started boasting how he and his co-conspirators had just put Francis in jail and threatened Francis with jail if she did not sign the papers; Feldman threaten that he would abuse tax payers money by forcing Francis to take a drug test every day; and threatened Francis life by stating: "If I had my way I would put you in a place where no one would ever find you again".

177. Jan 20, 2006: United States probation office received a copy of Francis active duty military spouse orders which Francis sent to let them know that she was relocating.

178. January 23, 2006: Francis called Washington DC and informed Timothy Cadagen that Jansen, US Probation Office tried to false imprison her; Easterling was trying to force Francis to take an unlawful DNA test; Probation officers were attempting to force Francis to unwarranted mental health treatment; Feldman had threatening her and she was going to file a FTCA claim if the harassment did not stop. Francis also informs Washington DC that Capt. Yoder, Capt. Astle and her counselors amongst others were involved in the conspiracy to false imprison her.

179. January 30, 2006: Francis spouse signs out of base housing, permanent change of station. Active duty military member is relocated to a remote assignment in South Korea and Francis is relocated to San Francisco California.

180. February 24, 2006: Capt. Astle and Captain Yoder are involved in a conspiracy to kidnap Francis. Easterling filed another probation violation petition. The petition is signed by co-conspirator Vinson on February 24, 2005.

181. March 2, 2006: Preisser filed a motion to dismiss Francis appeal alleging Francis absconded from probation knowing that the probation was unconstitutional or illegal or unlawful.

182. March 3, 2006: 11th Circuit Judge Dubina denied the motion without prejudice providing Francis is a fugitive.

183. From May to June 2006: Eglin AFB OSI is sending email overseas claiming that US Marshals are looking for Francis for questioning (Exhibit 45) as if Francis is some criminal. Francis is an outstanding citizen that has never been convicted of a misdemeanor or a felony in her life. The only thing US Marshal were looking for Francis was to kidnap or murder her because no one in this underline case had qualified immunity.

184. Around June 2, 2006: As soon as Francis spouse gets to update his records, Eglin AFB gives Francis address to Vinson.

185. June 7. 2006. Senior District Judge Roger Vinson gets US Marshal to arrest Francis at her apartment in San Francisco alleging that Francis is a fugitive. Capt. Astle name is on the probation violation petition with the intent to make it appear that Francis falls under military jurisdiction (Exhibit)

186. June 22, 2006: Francis appeared in court only to be told that she would not have a probable cause hearing and would be going before Vinson on June 28, 2006. The hearing is scheduled at the last minute after learning that Francis hired an attorney to prevent Lammers from being forced on her. Francis attorney informs Francis that it is the south and it's dangerous. Francis fears for her life.

187. June 28, 2006: Francis was vindictively false imprisoned for three months in the Bureau of Prison for the purpose of stealing her DNA and putting it in a DNA database to defame an outstanding citizen and for the purpose of preventing or deterring Francis from filing a tort claim.

188. After the kidnapping attempt failed Vinson had Magistrate Judge Timothy come in to inform Francis that she would not get a probable cause hearing and she would be going before Vinson for a revocation hearing of 18 U.S.C. 111 on June 28 2006.

189. On June 28 2006 Vinson false imprisoned Francis in the Federal Bureau of Prison for three months or 90 days with the intent to prevent or deter Francis form filing a FTCA.

190. Marbut attempted to get Golder to agree to false imprisonment for 30 months when he sent PDF document alleging that Vinson had false imprisoned Francis for 30 months (Exhibit 49).

191. In July 2006 Tracey Broadnax joined the conspiracy. Broadnax intentionally, willfully, maliciously, and falsified that: Francis was in jail on December 10, 2004; had a past history of violence (exhibit); was being designated to FCI Dublin for assaulting a Navy Officer; and falsified that Francis was in transit with the intent to make it appear that Francis was in custody as a fugitive.

192. Barkett, Barn and Anderson joined the conspiracy, affirmed a falsified conviction for 18 U.S.C. 111 and further falsified that Francis did not appeal her conviction knowing that Francis was neither charged nor convicted of 18 U.S.C. and publicized their ruling with knowledge of its falsity.

b) Statement of the principal factual issues in dispute

Plaintiff's contends that on June 7, 2006 Chief District Judge Roger Vinson, et al, expressly and intentionally directed their tortuous and/or wrongful conduct, civil conspiracy and criminal racketeering activities at Plaintiff's San Francisco residence (1467 7th Ave #105) when they purposely faxed a *Notice of Proceedings On Out-Of-District Criminal Charges* that contained a falsified warrant for Plaintiff's arrest to the United States District Court for the Northern District of California (San Francisco Division) under Case no: 30670357, stamped MEJ. [Plaintiff complaint paragraphs 657-691 and 740-802]

Plaintiff contends that the falsified warrant alleging a probation violation of Resisting, Impeding, Opposing, or Interfering with Certain Officers in violation of 18 U.S.C. 111 was not sent out of some act to perform a discretionary function of the court. It was voluntarily, intentionally, knowingly, and purposely sent in the clear

absence of all jurisdictions —that is, the alleged probation violation of Resisting, Opposing, Impeding, or Interfering with Certain Officers in violation of 18 U.S.C. 111 was sent in absence of:

- a sworn complaint alleging Plaintiff was believe to have committed an offense of Resisting, Opposing, Impeding or Interfering with Certain Officers or any offense against the United States;
- any court document reflecting the Grand Jury charges *the defendant Kaytrena J. Francis with **Resisting, Opposing, Impeding, or Interfering with Certain Officers** in violation of Title 18, United States Code, Section 111;*
- any court document reflecting the United States through its Attorneys or Attorney charges *the defendant Kaytrena J. Francis with **Resisting, Opposing, Impeding, or Interfering with Certain Officers** in violation of Title 18, United States Code, Section 111*
- a waiver of Indictment form sign by Plaintiff for Resisting, Opposing, Impeding or Interfering with Certain Officers in violation of 18 USC 111
- a negotiated plea for Resisting, Opposing, Impeding or Interfering with Certain Officers in violation of 18 USC 111
- an arraignment of Resisting, Opposing, Impeding, or Interfering with Certain Officers in violation of 18 USC 111
- a conviction of Resisting, Opposing, Impeding or Interfering with Certain Officers in violation of 18 U.S.C. 111 or any offense against the United States.
- Plaintiff ever being prosecuted by a United States Attorney for an offenses alleging Resisting, Opposing, Impeding or Interfering with Certain Officers in violation of 18 U.S.C. 111 or any other Offense against the United States

Defendants have only offered the alleged felony Information which United States Attorney Gregory R. Miller vindictively filed under simple assault on March 11 2005 – alleging an offense of *18 U.S.C. 111 within the special maritime.* Plaintiff contends that this is not proof of jurisdiction.

3. **Legal Issues**:

1. Whether the United States of America has violated the Federal Tort Claims Act

2. Whether Plaintiff has a cause of action under 42 USC 1983, 42 USC 1985, or Bivens against United States Air Force (USAF) and Defendant(s) A1C Jason Archilla and TSgt Chad Dillon whose conduct violated Plaintiff clearly established Fourth Amendment right to be free from unlawful seizure when they arrested her without probable cause on December 10 2004.

3. Whether Plaintiff has a federal cause of action under 42 USC 1983 or Bivens against USAF and Defendant(s) A1C Archilla and TSgt Dillon for use of unconstitutional excessive force during the unlawful seizure which violated Plaintiff clearly established Fourth Amendment rights on December 10 2004.

4. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendants Maj. Farrar, Lt. Eskridge, Capt. Yoder, Capt. Astle, Major Young, MSgt Eubanks, TSgt Dillon, A1C Archilla, MSgt Shepherd for their racially motivated conspiracy to deprive Plaintiff of equal protection the laws, or of equal privileges and immunities under the laws.

5. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendants Maj. Farrar, Capt. Yoder, Capt. Astle, and United States Department of Justice Defendants Gregory R. Miller, and Stephen Preisser for their racially motivated conspiracy to deprive Plaintiff of: equal protection the laws, due process of law, right to a grand jury indictment or of equal privileges and immunities under the laws by filing an alleged felony under simple assault in the magistrate court.

6. Whether Plaintiff has a Bivens action against Defendant(s) Maj. Farrar, Capt. Yoder, Capt. Astle, Gregory R. Miller, Stephen Preisser, et al for violation of Plaintiff's First Amendment rights-- retaliatory prosecution. (Mar 11 2005)

7. Whether Plaintiff has a Bivens action against Defendant(s) Capt. Yoder, Capt. Astle, Gregory R. Miller, Stephen Preisser, et al for violation of Plaintiff's Fifth Amendment rights– vindictive prosecution without probable cause. (Mar 11 2005)

8. Whether Plaintiff has a Bivens action against Defendant(s) Capt. Yoder, Capt. Astle, Gregory R. Miller, Stephen Preisser, et al for conduct which violation of Plaintiff's Fifth and Fourth Amendment rights to a grand jury indictment, procedural and substantive due process to be free from criminal prosecution without probable cause (Mar 11 2005)

9. Whether Plaintiff has a Bivens action against Defendant US Magistrate Miles Davis for conduct and actions taken in the clear absence of all jurisdiction (march 16 2005) which violated Plaintiff Fifth Amendment right to due process of law, equal privileges under laws, and right to a grand jury indictment.

10. Whether Plaintiff has a Bivens action against Defendant US Magistrate Miles Davis for conduct and actions taken in the clear absence of all jurisdiction (march 16 2005) which violated Plaintiff Sixth Amendment right counsel and right to notification..

11. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens Defendants Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson; and David Lee Sellers for their racially motivated conspiracy (April 2005) to deprive Plaintiff of: equal protection, due process and right to a grand jury indictment by allowing Plaintiff to forcibly prosecuted by Capt. Yoder and Capt. Astel.

12. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson and David Lee Sellers for their racially motivated conspiracy (April 2005) to deprive Plaintiff of: equal protection, due process and right to a grand jury indictment by allowing Plaintiff to forcibly prosecuted by Capt. Yoder and Capt. Astel.

13. Whether Plaintiff has a Bivens action against Chief District Judge Roger Vinson for conduct and actions taken in the clear absence of all jurisdiction (April 28 2005) which violated Plaintiff Fifth Amendment right to due process of law, equal privileges under laws, and right to a grand jury indictment by granting Capt. Yoder a favor to forcibly prosecute Plaintiff for the alleged felony Congress did not enact – 18 U.S.C. 111 within the special maritime.

14. Whether Plaintiff has a Bivens action against Defendant Chief District Judge Roger Vinson for conduct and actions taken in the clear absence of all jurisdiction (April 28 2005) which violated Plaintiff Fourth and Fifth Amendment or substantive due process right to be free from criminal prosecution without probable cause

15. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendants Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson; and Robert Augustus Harper for their racially motivated conspiracy (May 2005) to deprive Plaintiff of: equal protection, due process and right to a grand jury indictment by falsifying that Plaintiff had been indicted by a grand jury.

16. Whether Plaintiff has a Bivens action against Defendant Chief District Judge Roger Vinson for conduct and actions taken in the clear absence of all jurisdiction (June 2005) which violated Plaintiff Sixth and Fifth Amendment right to notification when he allowed Capt. Yoder and Capt. Astle to forcibly prosecute Plaintiff for a felony before a misdemeanor jury without providing Plaintiff an arraignment.

17. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson; and Robert Augustus Harper for their racially motivated conspiracy (June 2005) to deprive Plaintiff of: equal protection, due process when they by used a peremptory strike to remove an African American off the misdemeanor jury and then used words like 'nigger', 'that African American' and they (African Americans) are not important before the misdemeanor jury.

18. Whether Plaintiff has a Bivens action against Defendant(s) Capt. Michael Yoder, Capt. Astel et al; for conduct and actions taken in the clear absence of all jurisdictions (June 2005) which violated Plaintiff Fifth Amendment due process, right to a grand jury indictment, equal protection, and equal privileges; and fourth amendment



substantive due process right to be free from criminal prosecution without probable cause when they forcibly prosecuted Plaintiff before a misdemeanor jury for a felony congress did not enact – 18 U.S.C.111 within the special maritime.

19. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson, Bryan Jansen et al; and Robert Augustus Harper for their racially motivated conspiracy (From June 7 2005 to August 23 2005) to deprive Plaintiff of: equal protection, by falsifying Plaintiff was convicted of 18 U.S.C. Resisting, Impeding, Opposing, or interfering with certain officers.

20. Whether Plaintiff has a Bivens action against Defendant Chief District Judge Roger Vinson for conduct and actions taken in the clear absence of all jurisdictions (August 23 2005) which violated Plaintiff Fifth Amendment right by depriving Plaintiff of liberty without due process of law.

21. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Chief District Judge Roger Vinson, Bryan Jansen, Robert Harper, et al; for their racially motivated conspiracy to deprive Plaintiff of equal protection and due process by violating her fundamental right to access the courts.

22. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, and Chief District Judge Roger Vinson, Miles Davis, Charles Lammers, Donna Easterling et al; for their racially motivated conspiracy to use the operation of the courts probation violation petition for the purpose of intimidating, threatening or depriving Plaintiff of: equal protection, due process and her fundamental right to access the courts.

23. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Frank Hull, Joel Dubina et al for their conspiracy cover up Chief District Judge Roger Vinson actions taken without subject matter jurisdiction.

24. Whether Plaintiff has a Bivens cause of action against Defendant(s) Gregory Miller, Chief District Judge Roger Vinson et al for violation of Plaintiff's First and Fifth Amendment rights– retaliatory prosecution and vindictive prosecution without probable cause (November 29 2005 )

25. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Capt. Michael Yoder, Capt. Astel; Gregory R. Miller, Stephen Preisser, Roger Vinson, Donna Easterling, Kaufman, Lammers, et al; for their racially motivated conspiracy to go in disguise under false pretense that Plaintiff was a fugitive and use the operation of the courts *Notice of Proceedings On Out-Of-District Criminal Charges* for the purpose of kidnapping or murder Plaintiff to deprive her of right to file inter alia a FTCA or Bivens action, 42 USC 1981, 1985 against them (June 7 2006).

26. Whether Plaintiff has a Bivens cause of action against Defendant(s) Gregory Miller, Chief District Judge Roger Vinson et al for violation of Plaintiff's First and Fifth Amendment rights– retaliatory prosecution and vindictive prosecution without probable cause (June 28, 2006 )

27. Whether Plaintiff has a Bivens action against Defendant Chief District Judge Roger Vinson for conduct and actions taken in the clear absence of all jurisdictions (June 28, 2006) which violated Plaintiff Fifth Amendment right by depriving Plaintiff of liberty without due process of law.

28. Whether Plaintiff has a cause of action under 42 USC 1985(3) or Bivens against Defendant(s) Tracy Broadnax, Dominic Guadagnoli, Donna K. Cato, Chief District Judge Roger Vinson, Jerry Marbut, et al, for their racially motivated conspiracy to use the operation of FBOP designation process for the purpose of intimidating, threatening or depriving Plaintiff of: equal protection, due process and her fundamental right to access the courts.

29. Whether Plaintiff has a cause of action under 42 USC 1986 or Bivens against Defendant(s) Randee Golder, Elizabeth Faulk, Carmen Estrada Col Edmond Keith et al for refusing or neglecting to prevent the racially

motivated conspiracy to deprive Plaintiff of inter alia equal protection, due process, right of access to the courts, kidnap, or murder Plaintiff.

30. Whether the United States Air Force acted with deliberate indifference and callous disregard for Plaintiff's federal protected rights and is liable for their failure to supervise or train the active duty Air Force members and to take steps to prevent events such as occurred herein.

31. Whether the United States Department of Justice acted with deliberate indifference and callous disregard for Plaintiff's federal protected rights and is liable for their failure to supervise or train the federal officers and to take steps to prevent events such as occurred herein.

32. Whether the United States Courts acted with deliberate indifference and callous disregard for Plaintiff's federal protected rights and is liable for their failure to supervise or train the federal officers and to take steps to prevent events such as occurred herein.

33. Whether Plaintiff has a civil RICO against Chief District Judge Roger Vinson, et al, for using their positions to maintain, participate, control and conduct the United States District Courts and the Eleventh Circuit affairs through a pattern of racketeering activity where each racketeering predicate act was designed to corrupt the operation of the courts own process.

4. **Motions**: All prior and pending motions, their current status, and any anticipated motions.

1. The following motions are pending before this Honorable court with a hearing date set for September 5, 2008.

2. Plaintiff's opposition to Third Party Defendant(s) Harper, Sellers, and Gold motion to dismiss was filed on February 29 2008.

3. Plaintiff's opposition to United States of America (FTCA) as to Defendant(s) United States Air Force and, in their official capacities, Col Edmond Keith, Col Dean R. Clemons, SA Brian Solecki, Lt Col Vincent C. Smith, Capt. Heather A. Baker, Capt. Michael Yoder, Capt. Joanna Astle, Donna e. young, 1Lt Kee-Sha D. Eskridge, Msgt Edward Shepherd, Lt Col Scott Farrar, CMSgt Vince Eubanks, MSgt Brian Henderson, TSgt Christopher Anglin, TSgt Chad Dillon and A1C Jason Archilla's *motion(s) to dismiss* were filed on April 4, 2008.

4. Plaintiff's opposition to United States of America (FTCA) as to Defendant(s) United States Department of Justice and, in their official capacities, Gregory R. miller, E. Bryan Wilson, and Stephen P. Priesser *motion to dismiss* was filed on April 4, 2008.

5. Plaintiff's opposition to United States of America (FTCA) as to Defendant(s) Federal Bureau of Prisons *motion(s) to dismiss* and in her official capacity Tracy Broadnax was filed on April 4, 2008.

6. Plaintiff's opposition to United States of America (FTCA) as to Defendant(s) Dominic Guadagnoli and Donna K. Cato in their official capacities motion(s) to dismiss was filed on April 4, 2008.

7. Plaintiff's opposition to United States of America (FTCA) as to Defendant(s) United States Courts and, in their official capacities, Clyde Roger Vinson, Miles Davis, W. Paul Rayborn, Jerry Marbut, Andrew Elliott, Bryan E. Jansen, Larry Gibbs, Donna Easterling, Michael Feldman, Joel F. Dubina, Frank M. Hull, Rosemary Barkett, Susan H. Black, and R. Lanier Anderson motion to dismiss was filed on April 4, 2008.

8. Plaintiff's opposition to Florida Defendant(s): Federal Public Defendant(s) Chet Kaufman, Charles Lammers and Randolph P. Murrell *motion to dismiss* was filed on June 11, 2008.

9. Plaintiff's opposition to Individual US Courts Defendant(s) in their individual capacities, Clyde Roger Vinson, Miles Davis, W. Paul Rayborn, Jerry Marbut, Andrew Elliott, Bryan E. Jansen, Larry Gibbs, Donna Easterling, Michael Feldman, Joel F. Dubina, Frank M. Hull, Rosemary Barkett, Susan H. Black, and R. Lanier Anderson *motion(s) to dismiss* was filed on July 14 2008.

10. Plaintiff's opposition to Individual Marshals Defendant(s) in their individual capacity Dominic Guadagnoli and Donna K. Cato *motion(s) to dismiss* was filed on July 14 2008.

11. Plaintiff's opposition to Individual Air Force Defendant(s) in their individual capacities, Col Edmond Keith, Col Dean R. Clemons, SA Brian Solecki, Lt Col Vincent C. Smith, Capt. Heather A. Baker, Capt. Michael Yoder, Capt. Joanna Astle, Donna e. young, Lt Col Scott Farrar, CMSgt Vince Eubanks, MSgt Brian Henderson, TSgt Christopher Anglin, and TSgt Chad Dillon's *motion(s) to dismiss* was filed on July 14 2008.

12. Plaintiff's opposition to Individual United States Department of Justice Defendant(s) in their individual capacities, Gregory R. miller, E. Bryan Wilson, and Stephen P. Priesser's *motion(s) to dismiss* was filed on July 14 2008.

13. Plaintiff's opposition to to Individual Defendant Federal Bureau of Prisons and in her Individual capacity Tracey Broadnax *motion(s) to dismiss* was filed on July 14 2008.

14. Plaintiff's opposition to California Defendant(s): Federal Public Defendant(s) Elizabeth Faulk and Faulk's assistant Carmen Estrada's *motion to dismiss* was filed on Aug 4, 2008.

15. Plaintiff anticipates the following future motion(s)

- *Motion to Amend – where appropriate:*
- *Motion for Summary Judgment*
- *Motion(s) for resolving further discovery disputes – when needed*
- *Motion to Bifurcate – legal issues from civil RICO*

### 5. Amendment of Pleadings:

All motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before Feb 10 2009

### 7. Evidence Preservation:

Plaintiff expects to meet with parties to confer on evidence preservation and to discuss a stipulated preservation order.

### 7. Disclosures

There has not been any compliance with initial disclosures pursuant to Fed.R.Civ.P. 26. Plaintiff proposes that parties exchange initial Disclosures on or before September 20 2008.

### 8. Discovery

1. No Discovery has been taken to date.

2. Plaintiff anticipates propounded written discovery; including interrogatory request, request for admissions, oral depositions of all named Defendant(s) within the complaint, and document request.

3. Plaintiff anticipates propounded discovery for United States Air Force Defendant(s) who may be stationed overseas.

4. Plaintiff proposes the following dates related to Discovery but prefers that the court set the appropriate scheduled

Discovery Cut-off                              Septmenber 30 2009
Expert Designation, including reports          July 31, 2008

9. **Class Actions**: If a class action, a proposal for how and when the class will be certified.

This is not a class action.

10. **Related Cases**:

There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. **Relief**:

1. Plaintiff seeks 5 billion in compensatory damages from United States for her FTCA claim which is considerably less that her 18 Billion demanded in her Administrative claim filed with respective agencies.

2. Plaintiff seeks against the defendants, jointly and severally, for actual, general, special, compensatory damages in an amount in excess of one billion dollars and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

In addition, the Francis pray for equitable relief against the Defendants in the form of such injunctive and related relief as might be appropriate in accordance with 18 U.S.C. § 1964(a) including a permanent injunction to:

1. Void all orders and judgments under case no 05-00027-CR-3-RV
2. Void all orders and judgments under appellate court under case no. 05-14985
3. Expunge falsified federal record in district court under case no. 05-00027-CR-3-RV, including, records of false arrest, fingerprints, photographs taken, forced trial, and falsified convictions
4. Expunge falsified appeal record in the appellate court under case no. 05-14985
5. Expunge alleged arrest or hold record of Escambia County Pensacola county jail where Francis was false imprisoned on November 29 and 30 of 2005 including fingerprints and photographs taken
6. Expunge alleged arrest record references to arrest holding record at Escambia county jail
7. Expunge arrest record in San Francisco county jail including, records of false arrest, fingerprints, photographs taken, forced trial, and falsified convictions
8. Expunge District court record at San Francisco District court under case no.
9. Expunge Francis's DNA which was forcibly taken at FCI Dublin from DNA database
10. Expunge record from FBOP including fingerprints and photographs taken
11. Permanently remove unpublished falsified document form eleventh circuit website, under case no. 05-14985
12. http://www.ca11.uscourts.gov/unpub/ops/200514985.pdf which portrays Francis in false light as having a conviction of 18 U.S.C.111 and any other reference to case no. 05-14985

12. **Settlement and ADR**:

1. This matter has not bee set for ADR yet. Plaintiff is willing to participate in a Settlement Conference governed by ADR Local Rule 7.

2. Plaintiff proposes that the court set the ADR date for this matter.

13. **Consent to Magistrate Judge For All Purposes**:

Plaintiff does not consent to magistrate jurisdiction on any of the proceedings.

14. **Other References**:

1. Plaintiff believes that the court may need to appoint someone to expedite discovery and resolution of the case.

2. This case is <u>not</u> suitable for multidistrict litigation.

15. **Narrowing of Issues**:

Plaintiff believes that it is premature to narrow issues due to the possibilities of a need for amendments and no discovery has been taken to date.

16. **Expedited Schedule**:

1. Plaintiff believes that because that because this case involves many constitutional or legal issues which Defendants have not offered any affirmative defense an expedited schedule may be possible with dispositive motions and settlement conference.

2. Plaintiff believes her civil RICO claims will need to be pursued on a more complex track due to the number of defendants involved.

17. **Scheduling**:

Plaintiff proposes the following dates related to trial and pre-trial activities:

| | |
|---|---|
| Filing of Dispositive Motions | October 30 2009 |
| Hearing of Dispositive Motions | November 30 2009 |
| All other motions | December 31 2009 |
| Pre-Trial Conference | January 30 2010 |
| Trial | On or after February 38 2010 |

18. **Trial**:

1. Plaintiff has preserved her right as declared by Seventh Amendment and pursuant to Fed R. Civ. P 38 to have all issues triable by right of jury to be tried before a jury of convening authority.

2. Plaintiff expects trial to take 4-6 weeks

19. **Disclosure of Non-party Interested Entities or Persons**:

Plaintiff has no knowledge of any party, Non-party Interested Entities or Persons. Plaintiff has not filed a "Certification of Interested Entities or Persons" pursuant to Civil Local Rule 3-16.

20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

No additional matters that can expedite this trial are known at this time.

Dated: August 29, 2008

By:



Kaytrena J. Francis
Plaintiff, Pro Se